# GRIMES DRY GOODS COMPANY *v.* MALCOLM.

**ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.**

No. 60. Argued and submitted October 21, 1896. — Decided November 30, 1896.

In Arkansas a conveyance of personal property of the grantor to the grantee in trust accompanied by delivery, conditioned that, as the grantor is indebted to several named persons in sums named, if he shall within a time named pay off and discharge all that indebtedness and interest, then the conveyance shall be void, otherwise the grantee is to sell the property at public sale, after advertisement, and apply the proceeds to the expenses of the trust, the payment of the debts named, in the order named, and the surplus, if any to the grantor, is, under the decisions of the Supreme Court of that State, a deed of trust in the nature of a mortgage.

The submission of special questions to the jury under the statute of Arkansas is within the discretion of the court.

What the mortgagor in such an instrument said to a third party, after execution and delivery, respecting his intent in executing the instrument, is not admissible to affect the rights of the mortgagee.

All the evidence in the case being before this court, and it being clear from it that the trial court would have been warranted in peremptorily instructing the jury to find for the defendant, the plaintiff suffered no injury from the refusal of the court to permit the jury to retire a second time.

THE case is stated in the opinion.

*Mr. G. B. Denison* and *Mr. N. B. Maxey,* for plaintiff in error, submitted on their brief.

*Mr. A. G. Moseley* for Waples, defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was brought by the plaintiff in error, a Missouri corporation, in the United States court for the Indian Territory, Second Judicial Division, to recover from Malcolm, one of the defendants in error, the sum of $1845, alleged to be due the plaintiff on open account for goods, wares and merchandise

sold and delivered by it to Malcolm. The plaintiff alleged that $1200 of the account was due, and that the remainder thereof was to become due; also, that Malcolm had sold, conveyed or otherwise disposed of his property or suffered or permitted it to be sold with the intent to cheat or defraud his creditors or to hinder or delay them in the collection of their debts. A writ of attachment based upon affidavit was issued and levied upon one storehouse and fixtures, one stock of general merchandise and one gin house and saw mill as the property of Malcolm. Malcolm filed an affidavit controverting the grounds of the attachment.

By leave of the court the appellee Waples interpleaded, alleging that at the time of the filing of the suit and of the levying of the attachment, he was rightfully in possession and control of the attached property in virtue of an instrument of writing executed by Malcolm on the 19th day of January, 1891, at Durant, in the Indian Territory, at which time Malcolm was in rightful possession and control of the property; that at the time of the execution and delivery of that instrument Malcolm delivered to him, Waples, actual possession of such property; that when the property was seized he notified the United States marshal of his claim to it, and demanded possession; that said instrument " was and is a mortgage with power of sale; that the same was intended by said defendant, John Malcolm, as a security for certain debts therein enumerated, and was so accepted by interpleader."

The above instrument recited that Malcolm does " bargain, sell and deliver" to Paul Waples certain described personal property, including the property attached in this case, " to have and to hold the same unto the said Paul Waples, and his successors in this trust forever." The condition of the conveyance is recited to be : " Whereas I am indebted to the Leeper Hardware Company, $2552.23; and to Waples Platter Company, two notes aggregating $745.00, not including interest or attorney's fees and an open account for $259.39; and to Lingo, Waples & Company, two notes aggregating $399.20, not including interest or attorney's fees; and to Waterman, Starr & Company, $224.95; and to Burton, Lingo & Company,

$184.00; and to John R. Garr estate, $142.90, and to various other parties, named in Schedules ' A ' and ' B,' hereto annexed and made a part hereof, in the sums set opposite their respective names.    Now if, at any time within sixty days from this date, I pay off and discharge all of the indebtedness described aforesaid, including interest, then this conveyance shall be null and void, and of no further force or effect, and said goods, merchandise and property shall be restored to me.    But if I fail to pay all of said indebtedness, with accrued interest, if any, within sixty days aforesaid, then said Paul Waples, or his successors, shall have the right, and it shall be his duty at the expiration of said sixty days, after first advertising the time, terms and place of sale for ten days previous to the day of sale, . . . to sell all of the aforesaid property then on hand at public outcry, for cash."

It was further provided in that instrument that Waples should take exclusive possession of the personal property in person or by his agents or employés, and should have the right to sell the merchandise in the due course of business for cash only.    The money realized from the sale of the property, or any portion thereof, was to be appropriated first to the payment of the reasonable expenses "of executing this trust"; next to the payment of the claims of certain parties named ; then to the payment of creditors, first those named in Schedule A, then those named in Schedule B, each set to be paid in full, and if not enough to pay all, then to be paid *pro rata;* the balance, if any, left in the hands of Waples was to be paid to Malcolm.

The plaintiff filed a reply, controverting all the allegations of Waples' pleading, and denying that Waples was in possession and control, and entitled to possession and control, of the attached property or that the instrument referred to was or is or was intended to be a mortgage with power of sale.    It averred that, as to it, "the said instrument and all acts done by said Malcolm and said Waples in connection with the execution thereof, and all acts done by either of them or by any person under and by virtue of it, are and ever have been fraudulent and tended to hinder and delay plaintiff in the collec-

tion of *their* debt, and was contrived and intended with the fraudulent intent to cheat, hinder or delay the plaintiff and the creditors in the collections of its and their debt, and was and is void."

The reply further alleged " that the said instrument was and is a deed of assignment, and as such is in violation of the law governing voluntary assignments, and was and is wholly void, and the said interpleader never acquired any rights under the same, and it never gave him any right to the possession of the property attached in this action, and that said Waples never had, and has not now, under and by virtue of the said instrument, any right to take or hold possession of the said property, and has no right to recover the same in this action."

Judgment was taken by the plaintiff against Malcolm for the amount of the debt due from him, and the cause having been tried between the plaintiff and Waples, as well as upon the issue raised by the attachment, the jury found for Malcolm on the latter issue and for Waples as to the property in controversy. Judgment upon that verdict having been entered, a writ of error was prosecuted to the United States Circuit Court of Appeals for the Eighth Circuit, and the judgment of the court in the Indian Territory was affirmed. 19 U. S. App. 229 ; 58 Fed. Rep. 670.

The fundamental question in this case is whether the instrument of January 19, 1891, executed by Malcolm is a deed of trust in the nature of a mortgage, or a deed of assignment for the benefit of creditors. This instrument was before the Circuit Court of Appeals of the Eighth Circuit in *Rainwater-Boogher Hat Co.* v. *Malcolm*, 10 U. S. App. 249 ; 2 C. C. A. 476 ; 51 Fed. Rep. 734, 737 ; and that court held it to be a deed of trust in the nature of a mortgage — the legal equivalent of a mortgage with a power of sale — upon the authority of the decisions of the Supreme Court of Arkansas construing the statute of that State regulating assignments for the benefit of creditors ; which statute became a part of the law of the Indian Territory under the act of Congress of May 2, 1890, c. 182, § 31, 26 Stat. 81, 94.

By the statutes of Arkansas relating to assignments it is

provided: "Sec. 305. In all cases in which any person shall make an assignment of any property, whether real, personal, mixed or choses in action, for the payment of debts before the assignee thereof shall be entitled to take possession, sell or in any way manage or control any property so assigned, he shall be required to file in the office of the clerk of the court exercising equity jurisdiction a full and complete inventory and description of such property, and also make and execute a bond to the State of Arkansas in double the estimated value of the property in said assignment, with good and sufficient security, to be approved by the clerk of said court, conditioned that such assignee shall execute the trust confided to him, sell the property to the best advantage and pay the proceeds thereof to the creditors mentioned in said assignment according to the terms thereof, and faithfully perform the duties according to law." Act February 16, 1859, § 1, as amended by act February 23, 1883, Mansfield's Digest, 1884, p. 219.

If the instrument executed by Malcolm was, within the meaning of the statute, an assignment for the benefit of creditors, then Waples' possession of the property was unauthorized, for he did not comply with the provisions of the statute by filing the inventory and giving the bond required.

In *Richmond* v. *Mississippi Mills*, 52 Arkansas, 31, the court said: "We do not hold that the giving of one or more mortgages, the confession of judgments or other means adopted to give security or preference, constitute necessarily or even ordinarily an assignment. But we do hold that where one or more instruments are executed by a debtor, in whatsoever form or by whatsoever name, with the intention of having them operate as an assignment, and with the intention of granting the property conveyed absolutely *to the trustee* to raise a fund to pay debts, the transaction constitutes an assignment." The doctrines of that case were affirmed in *Fecheimer* v. *Robertson*, 53 Arkansas, 101, 104, the court saying: "The confidence of the mortgagors that no surplus would result to them in this case is apparent from the deeds, as also from the testimony. The purpose was to devote the property to the payment of debts. This may be accomplished by either a

mortgage or an assignment. The question is, have the grantors by stipulations in the deeds or by their agreements and acts impressed the character of a trust for creditors upon this transaction?" In *Robson* v. *Tomlinson*, 54 Arkansas, 229, 233–234, where the question was whether a certain instrument was to be taken as a mortgage given to secure a debt, or a deed of assignment for the benefit of creditors, the court said : " The instrument relied upon by Tomlinson, the interpleader, is in form a mortgage, and not an assignment for the benefit of creditors. The presumption, until overcome by proof, is that the parties intended it to have the effect the law gives to a mortgage — that is, that it should stand as security for a debt. The fact that it provides that the mortgagor should surrender immediate possession to the trustee for the mortgagee does not convert it into an assignment. To accomplish that result it must be shown that it was the intention of the parties that the debtor should be divested not only of his control over the property, but also of his title. *Cadwell's Bank* v. *Crittenden*, 66 Iowa, 237. The equity of redemption may be mortgaged or sold, and so be of value to a debtor who has not the pecuniary ability to redeem ; and he has a right to reserve it in dealing with his creditor, regardless of his solvency. . . . Neither the possession of the goods, nor the unreasonableness of the debtor's expectation of paying the debt at maturity, nor his intent never to pay, is the criterion for distinguishing a mortgage from an assignment. The controlling guide, according to the previous decision of the court, is, was it the intention of the parties, at the time the instrument was executed, to divest the debtor of the title and so make an appropriation of the property to raise a fund to pay debts? . . . If the equity of redemption remains in the debtor, his title is not divested, and an absolute appropriation of the property is not made. In arriving at the intent of the parties, therefore, the question is, not whether the debtor intended to avail himself of the equity of redemption by payment of the debt, but was it the intention to reserve the equity ? If so, the instrument is a mortgage and not an assignment." See also *Penzel Co.* v. *Jett*, 54 Arkansas, 428, 430.

These cases, as was said in *Appolos* v. *Brady*, 4 U. S. App. 209; 49 Fed. Rep. 401, 403; "declare the test to be: Has the party made an absolute appropriation of property as a means for raising a fund to pay debts, without reserving to himself, in good faith, an equity of redemption in the property conveyed?"

Accepting, as we properly may, the law of Arkansas, upon the subject of assignments for the benefit of creditors and mortgages given to secure the payment of debts, to be as declared by the Supreme Court of that State, we are of opinion that the instrument executed by Malcolm to Waples, tested alone by its words, is a deed of trust in the nature of a mortgage. It does not make an absolute appropriation of the property for the purpose of creating a fund for the payment of the debts named, but creates a lien to secure those debts, subject to an express reservation by the grantor of a right, within a specified time, to pay the debts, and have possession of such of the property as then remained unsold restored to him. Clearly, this instrument, upon its face, is nothing more than a security for certain debts — an equity of redemption remaining in the debtor. It did not make an absolute, fixed appropriation of the property for the payment of debts.

An effort was made to show that the parties really intended the instrument to operate as an assignment for the benefit of creditors. Without stopping to consider whether parol proof could be properly admitted for such a purpose, we content ourselves with saying, as did the Circuit Court of Appeals, that the proof wholly fails to show that either of the parties to the instrument intended it to be other than what it purports to be on its face, namely, a mortgage.

It is assigned for error that the trial court refused to submit to the jury certain special questions framed and presented by the plaintiff after the charge to the jury and before the argument. This contention rests upon certain provisions of the statutes of Arkansas relating to pleading and practice, (c. 119,) which are made part of the law of the Indian Territory by the above act of Congress of May 2, 1890, c. 182, 26 Stat. 81, 94. Those provisions are: "Sec. 5141. A special verdict is that by which the jury finds the facts only. It must present the

facts as established by the evidence, and not the evidence to prove them, and they must be so presented as that nothing remains to the court but to draw from them conclusions of law. Sec. 5142. In all actions the jury, in their discretion, may render a general or special verdict, but may be required by the court in any case in which they render a general verdict to find specially upon particular questions of fact to be stated in writing. This special finding is to be recorded with the verdict." The submission of special questions to the jury is, under the statute, in the discretion of the court. It was so held in *Little Rock & Fort Smith Railway* v. *Pankhurst*, 36 Arkansas, 371, 378. Independently of the statute of Arkansas, this court has held that "the personal conduct and administration of the judge in the discharge of his separate functions was neither practice, pleading nor a form or mode of proceeding" within the meaning of the practice act of June 1, 1872, 17 Stat. 197, now § 914 of the Revised Statutes, and that "the statute was not intended to fetter the judge in the personal discharge of his accustomed duties, or to trench upon the common law powers with which in that respect he is clothed." *Mutual Accident Association* v. *Barry*, 131 U. S. 100, 119.

One of the exceptions taken by the plaintiff at the trial was to the action of the court in not permitting Malcolm to state what he said to one Wiswell, within two days after the execution of the instrument in question, as to what he intended that instrument to be, whether a mortgage or a deed of assignment. What the mortgagor said to others, after the execution of the mortgage and delivery of possession under it, could not affect the rights of the mortgagee. *Winchester & Partridge Mfg. Co.* v. *Creary*, 116 U. S. 161, 165.

The bill of exceptions contains the following statement of what occurred in the trial court before the jury retired to consider their verdict:

"And after the court had delivered its charge, and plaintiff had saved its exception thereto, as above set forth, the case was argued to the jury by the attorneys of the respective parties, and when the argument had closed, it being near adjourning hour, it was agreed between the parties in open

court that in case the jury agreed upon a verdict during the recess of court they might seal their verdict and give it to their foreman, and report it at the meeting of court to-morrow morning. And at the meeting of court the following morning, being the 24th day of September, 1892, said jury returned into court, and upon being asked by the court if they had agreed upon a verdict, the foreman of the jury, —— Oaks, replied: 'We have.' And thereupon —— Sheimer, one of the jurors, arose and said: ' Your Honor, I agreed to a verdict last night, but would like to change my vote, if I can do so.' Whereupon the court replied: 'That is a very strange proceeding,' and ordered the jury to return to their jury-room; and one of the jurors thereupon arose and said if he was permitted to introduce evidence he could prove that Sheimer was not a competent juror. And thereupon A. G. Moseley, counsel for the interpleader, rose and said that we had agreed that the jury might seal their verdict and report it at the opening of the court this morning, and insisted that the jury should return the verdict they had given their foreman. And thereupon the court ordered the jury to take their seats in the box, and said that he would not permit any such conduct, and ordered the foreman to hand the sealed verdict to the clerk, and the clerk to read it. And after the clerk had read the verdict, plaintiff, by its counsel, requested that the jury be polled, and the court thereupon asked each juror separately if that was his verdict, and each of them answered 'Yes, sir,' with the exception of the juror Sheimer, who replied, in answer to the court's question, 'Is that your verdict?' 'Yes, sir; I suppose so.' Plaintiff, by its counsel, excepted to the action of the court in not permitting the jury to again retire to their jury-room to again consider of their verdict, and also to the action of the court in directing the foreman of the jury to hand said sealed verdict to the clerk, and ordering the clerk to read it, and to the entering of said verdict as the verdict of the jury in the case. This exception was taken in open court before the jury had retired from the bar of the court or from their jury-box."

The bill of exceptions brings before the court all the evi-

dence, and it is clear that the trial court could properly have instructed the jury peremptorily to return a verdict for the defendant. *Delaware, Lackawanna &c. Railroad Co.* v. *Converse,* 139 U. S. 469, 472; *Anderson County Commissioners* v. *Beal,* 113 U. S. 227, 241; *North Pennsylvania Railroad* v. *Commercial Bank,* 123 U. S. 727, 733. In this view of the case the Circuit Court of Appeals well said that it was not error for the court to direct one juror to do what it ought to have directed all of them to do.

Other questions are presented by the assignments of error, but it is not necessary to discuss them. None of them furnish a ground for reversal. We perceive no error in the record, and the judgment of the Circuit Court of Appeals is

*Affirmed.*