In re BRANIFF AIRWAYS,
INCORPORATED, et al.

BRANIFF AIRWAYS, INCORPORATED,
et al.

v.

CIVIL AERONAUTICS BOARD.

Miscellaneous No. 4–221–E.
Bankruptcy No. 4–82–00369.

United States District Court,
N.D. Texas,
Fort Worth Division.

Jan. 20, 1983.

Ronald S. Orr, Gibson, Dunn & Crutcher, Los Angeles, Cal., Stephen L. Taylor, Dall FW Airport, Tex., for American Airlines, intervenor.

David Bonderman, Arnold & Porter, Washington, D.C., for Braniff.

## MEMORANDUM OPINION

MAHON, District Judge.

A hearing was held on January 13, 1983, concerning a "Motion to Revoke Reference of Adversary Proceedings" filed on January 11, 1983, by American Airlines, Inc., a corporation and an intervenor in the above-captioned proceeding pending before the Fort Worth Bankruptcy Division of this Court. The Court entered an Order on

January 14, 1983, holding that the Local Rule of the Northern District of Texas Concerning Bankruptcy Cases and Proceedings adopted by the United States District Court for the Northern District of Texas on December 21, 1982,[1] is constitutional and valid, and further holding that the Court has jurisdiction over bankruptcy cases and proceedings, including the one presently before it, pursuant to sections 1331, 1332, 1334, and 1471 of Title 28 of the United States Code. In support of that Order, the Court will now elaborate on its reasons by addressing: (1) The Court's Jurisdiction, (2) *Marathon's* Effect on the "Structure" of the Bankruptcy System, (3) The Court's Statutory and Equitable Powers, and (4) The Referral of the Braniff Bankruptcy Proceeding to the Bankruptcy Judge.

## I. *The Court's Jurisdiction*

### A. *28 U.S.C. § 1471.*

■ The United States Supreme Court invalidated at least a portion of 28 U.S.C. § 1471 in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— .U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (hereinafter called *Marathon* ). In his plurality opinion, Justice Brennan states:

We conclude that § 241(a) of the Bankruptcy Act of 1978 has impermissibly removed most, if not all, of "the essential attributes of the judicial power" from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts.

*Marathon* 102 S.Ct. at 2879–80.[2] By stating that the power was "impermissibly removed" from the district court, the Supreme Court clearly indicates that jurisdiction was first vested in the Art. III district court pursuant to § 1471(a), and it express-

es no disapproval of this grant of jurisdiction to the district court.

The next sentence and footnote of the plurality opinion, however, have led to some confusion over what parts of § 1471 were invalidated. Justice Brennan continues:

Having concluded that the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) is unconstitutional, we must now determine whether our holding should be applied retroactively to the effective date of the Act.

*Marathon* 102 S.Ct. at 2880.

In his use of the words "bankruptcy courts" in *Marathon,* Justice Brennan makes a distinction between bankruptcy courts and district courts. This should not be confused with the bankruptcy laws, which define "courts of bankruptcy" to include the district courts. *See* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 404(a), 92 Stat. 2549, 2683 (1978). Thus, the "broad grant of jurisdiction to the bankruptcy courts" does not refer to the grant of jurisdiction to the district courts. Furthermore, in footnote 40, he states:

It is clear that, at the least, the new bankruptcy judges cannot constitutionally be vested with jurisdiction to decide this state-law contract claim against Marathon. As part of a comprehensive restructuring of the bankruptcy laws, Congress has vested jurisdiction over this and all matters related to cases under title 11 in a single non-Art. III court, and has done so pursuant to a *single statutory grant of jurisdiction.*

*Marathon* 102 S.Ct. at 2880 n. 40 (emphasis added). This Court interprets the phrase "single statutory grant of jurisdiction" as referring to the words "all of the jurisdiction" in § 1471(c). This grant of jurisdiction under § 1471(c) encompasses not only bankruptcy "cases" (*see* § 1471(a)), but also

---

1. The stay of the United States Supreme Court of the effect of its decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), expired on Dec. 24, 1982. Thus, the Local Rule became effective on December 25, 1982.

2. Section 241(a) of the Bankruptcy Reform Act of 1978 includes not only the jurisdictional grants in 28 U.S.C. § 1471, but also venue, removal and other procedural matters. The Supreme Court decision in *Marathon* addresses only the jurisdictional grants of § 1471, which is included in § 241(a).

"all civil proceedings arising under title 11 or arising in or *related to* cases under title 11." 28 U.S.C. § 1471(b) (emphasis added). The Supreme Court's conclusion that at least some of the "related to" matters must be heard by an Art. III court meant that the words "all of the jurisdiction" contain both constitutional and unconstitutional grants of jurisdiction to the bankruptcy courts. Thus, an attempt to separate and remove the unconstitutional part of the bankruptcy court's jurisdiction from the constitutional part of its jurisdiction would be no easy feat. Facing such a difficulty, and examining the intent of Congress in § 1471(c), Justice Brennan continues his footnote:

> In these circumstances we cannot conclude that if Congress were aware that the grant of jurisdiction could not constitutionally encompass this and similar claims, it would simply remove the jurisdiction *of the bankruptcy court over these matters, leaving the jurisdictional provision* [in the bankruptcy court] *and adjudicatory structure intact with respect to other types of claims,* and thus subject to Art. III constitutional challenge on a claim-by-claim basis. Indeed, we note that one of the express purposes of the Act was to ensure adjudication of all claims in a single forum and to avoid the delay and expense of jurisdictional disputes.

*Marathon* 102 S.Ct. at 2880 n. 40 (emphasis added).

Finally, Justice Brennan concludes the footnote:

> Nor can we assume, as THE CHIEF JUSTICE suggests, *post,* at 2, that Congress' choice would be to have *this case* "routed to the United States district court of which the bankruptcy court is an adjunct." We think that it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III, in the way that will best effectuate the legislative purpose.

---

**3.** *See United States v. One 1974 Rockwell Aerocommander,* Civ. No. 4–80–289–E, at 5 n. 2 (N.D.Tex. Jan. 11, 1982), where, in an unpub-

*Marathon* 102 S.Ct. at 2880 n. 40 (emphasis added). The difficulty was *not* in separating § 1471(c) from § 1471(a) and (b), but in separating jurisdiction over "this case," *i.e.* a case like *Marathon,* requiring an Art. III court, from the other appropriate jurisdiction of the bankruptcy court over non-Art. III matters, all of which were combined in the words "all of the jurisdiction" in 28 U.S.C. § 1471(c). Therefore, this Court concludes that the Supreme Court never intended to invalidate, nor did it invalidate 28 U.S.C. § 1471(a) and (b), and that *Marathon* only held 28 U.S.C. § 1471(c) unconstitutional.[3]

### B. 28 U.S.C. § 1334, § 1331, and § 1332.

In light of the debate surrounding the continued validity of 28 U.S.C. § 1471(a) and (b), the Court will also address the question of its jurisdiction over bankruptcy cases and proceedings assuming *arguendo* that 28 U.S.C. § 1471 is no longer valid. During the transition period (from October 1, 1979, through March 31, 1984), Congress clearly intended for both the old and new versions of 28 U.S.C. § 1334 to exist simultaneously. *See* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, §§ 402, 403, 404, 92 Stat. 2549, 2682–83 (1978). The old § 1334 stated: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of all matters and proceedings in bankruptcy." 28 U.S.C. § 1334. It may be argued that Congress, in writing the new version of 28 U.S.C. § 1334 (making district courts the courts of appeals for final judgments, orders, and decrees of bankruptcy courts absent an appointed bankruptcy judge panel), intended that the old § 1334 would only apply to cases filed before October 1, 1979.

However, if the new grant of original and exclusive jurisdiction in 28 U.S.C. § 1471(a) —which was meant to repeal and replace the old § 1334 for cases filed after October 1, 1979—is unconstitutional and no longer valid, the Court must now read the bank-

lished opinion, this Court held subsection (c) to be the "fatal flaw" in section 1471.

ruptcy laws as if the new § 1471 had not been written. *See Frost v. Corporation Comm'n of Oklahoma,* 278 U.S. 515, 526–27, 49 S.Ct. 235, 239, 73 L.Ed. 483 (1929); *Davis v. Wallace,* 257 U.S. 478, 485, 42 S.Ct. 164, 166, 66 L.Ed. 325 (1922). In so doing, the Court finds that the old § 1334 places the original and exclusive jurisdiction over bankruptcy matters and proceedings in the district court.

This jurisdiction under the old § 1334 was "summary jurisdiction" only. The Court must now look to 28 U.S.C. § 1331 and § 1332 for those cases which would have originated in the federal district court because of either a federal question involved or the diversity of citizenship of the parties. Those cases, now properly in the district court's jurisdiction, may be combined with the bankruptcy cases in which they arise or to which they are related for the purpose of referring both the bankruptcy "matters and proceedings" (in this court's jurisdiction under the old § 1334) and the "arising in or related to" matters (in this court's jurisdiction under 28 U.S.C. § 1331 or § 1332) to the bankruptcy judge.[4]

## II. *Marathon's Effect on the "Structure" of the Bankruptcy System*

■ Next, the Court turns to the question of what adjudicatory structure[5] remains intact after *Marathon.* During the transition period from October 1, 1979, through March 31, 1984, Congress intended the old structure (under the 1898 Bankruptcy Act) to exist concurrently with the new structure (under the 1978 Bankruptcy Reform Act).[6] Assuming *arguendo* that *Mar-*

*athon* rendered the new bankruptcy structure unusable, the Court nevertheless has available an entire structure, left intact by Congress and *Marathon* and in existence through March 31, 1984, which may be used for the adjudication of bankruptcy cases and proceedings.

Counsel for American Airlines suggest that the Court, in promulgating the "Local Rule of the Northern District of Texas Concerning Bankruptcy Cases and Proceedings" is creating a subsidiary court ("Memorandum of Points and Authorities in Support of Motion to Revoke Reference of Adversary Proceedings" page 14). On the contrary, the Court is not "creating" anything, but is instead relying on and making use of an entire structure created by Congress, which will remain in existence through March 31, 1984, and which is already being used for the adjudication of cases filed before October 1, 1979. Furthermore, the Court disagrees with the suggestion that such a local rule, by using the presently existing bankruptcy structure, is in any way an "innovation" beyond the Court's local rule-making power. *See Miner v. Atlass,* 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960).

## III. *The Court's Statutory and Equitable Powers*

Having found an existing bankruptcy court structure,[7] the Court will now address its authority to use this existing structure to adjudicate bankruptcy cases and proceedings.

The parties in any civil proceedings which are "related to" bankruptcy cases, and which involve purely state law questions in which there is no diversity may raise such jurisdictional questions on a case by case basis (and only if § 1471(a) and (b) are no longer valid).

**4.** The Court is aware of the assertion that the word "case" in 28 U.S.C. § 1471(a) is narrower than "all matters and proceedings in bankruptcy" in the old § 1334. *See* 1 *Collier Bankruptcy Manual* ¶ 3.01[1][a] (3d ed. 1982). However, *either* by combination of § 1471(a) and (b)— giving this court jurisdiction over both "cases under title 11" [§ 1471(a)] and "all civil proceedings arising under title 11 or arising in or related to cases under title 11" [§ 1471(b)] or by the combination of bankruptcy "matters and proceedings" (old § 1334) and federal questions (§ 1331) and diversity suits (§ 1332), the Court concludes that it has jurisdiction over the matters now before it, as a basis for referring these matters to the bankruptcy judge.

**5.** *See* note 40 in *Marathon.*

**6.** Bankruptcy Act of 1978, Pub.L. No. 95–598, §§ 404 & 405, 92 Stat. 2549, 2683–85 continues the old bankruptcy structure through March 31, 1984.

**7.** *See* II *supra.*

## A. Statutory Authority.

■ Title 11 of the United States Code, as amended by the Bankruptcy Reform Act of 1978, provides that the "bankruptcy court may issue any order . . . necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a), *as amended by* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 101, 92 Stat. 2549, 2555 (1978). As defined in section 404(a) of the same Act, federal district courts are included in the definition of bankruptcy courts. *Id.* § 404(a), 92 Stat. at 2683.

The Local Rule, promulgated in an attempt to carry out congressional intent, would be clearly valid if based solely on this congressional grant of authority. The Order establishing the local rule was "necessary . . . to carry out" the congressional intent expressed by the whole statutory scheme, and is an "appropriate" means of carrying out the expressed intent.

Bankruptcy Rule 927, continued at least for the "interim period," October 1, 1979, through March 31, 1984, *see* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, §§ 402(b) & 404, 92 Stat. 2549, 2682–83 (1978), also authorizes adoption of local rules establishing court procedures. *See also* Fed.R.Civ.P. 83. The local rule adopted on December 21, 1982, would be, under this rule, a valid exercise of the Court's power to control procedure in the trial court.[8]

Finally, section 2071 of Title 28 of the United States Code allows courts the discretion to enact the rules under which they will conduct their business. As under the other statutory grants of authority mentioned above, this Court recognizes it is not legislating a solution to the bankruptcy problem, but merely implementing congressional intent under specific grants of authority.

## B. Equitable Powers.

Since the murky beginnings of English jurisprudence, the common law courts have sought to provide justice. More recently, Roscoe Pound observed that our law has been guided by the principle that "all legal institutions and all legal rules [are] . . . measured by reason and . . . nothing could stand in law that could not maintain itself in reason." R. Pound, *The Spirit of the Common Law* 81. Pound concludes that the development of Law will be effected through a theory of "right and justice and [a] conscious attempt to make the law conform to ideals." *Id.* at 84.[9] The practical application of this Court's attempts at justice, however, must be guided by the equity[10] jurisprudence of the United States.

---

8. Bankruptcy Rule 927 and Fed.R.Civ.P. 83 both require that rules made under their authority are not to be "inconsistent with these rules." Nothing in the Local Rule is inconsistent with either the Federal Rules of Civil Procedure or the Bankruptcy Rules.

9. Although the Constitution and laws of the United States define specific legal principles, equitable application of these principles depends on the application of common sense. Such common sense is reflected in the everyday events of the People. For example, the Court recalls the 1954 Cotton Bowl game involving the Universities of Rice and Alabama. As Dick Moegle of Rice sped along the sideline, heading for a certain score, Tommy Lewis leaped from the Alabama bench to tackle his opponent. Such interference was not covered by the collegiate rulebook, but the referee carried the ball to the goal line and awarded Rice a touchdown. This action illustrates the wisdom of the People in allowing officials to interpret the rules to result in a just decision. The referee "may enforce any penalty he con-

siders equitable" to remedy unfair acts not covered by specific rules. *See* D. Nelson, *Illustrated Football Rules* 174 (Doubleday & Co.1976).

The Court does not put sporting events on the same level as complex bankruptcy matters, but the wisdom reflected in this simple event illustrates the concept of "Natural Equity," defined as:

equivalent to justice, honesty, or morality in business relations,. or man's innate sense of right dealing and fair play . . . . the term "natural equity" may be understood to denote, in a general way, that which strikes the ordinary conscience and sense of justice as being fair, right, and equitable. . . .

Black's Law Dictionary 635 (4th ed. 1968).

10. Equity is defined as

Justice administered according to fairness as contrasted with the strictly formulated rules of common law . . . an alternative to the harsh rules of common law and . . . based on what was fair in a particular situation. . . . the spirit and habit of fairness, just-

Early decisions of the United States Supreme Court determined that "[t]here are certain powers inherent in the judicial office." *Nudd v. Burrows,* 91 U.S. (1 Otto) 426, 442, 23 L.Ed. 286 (1875). There is yet some doubt as to Congress' power to "trench upon the common-law powers" with which the judge is clothed. *Indianapolis & St. Louis R.R. v. Horst,* 93 U.S. (3 Otto) 291, 300, 23 L.Ed. 898 (1876). *See also Grimes Dry Goods Co. v. Malcolm,* 164 U.S. 483, 490, 17 S.Ct. 158, 160, 41 L.Ed. 524 (1896); *Mutual Accident Assoc. v. Barry,* 131 U.S. 100, 120, 9 S.Ct. 755, 761, 33 L.Ed. 60 (1889). In dispensing justice, this Court must be limited to its constitutional role—reaching neither into the legislative nor executive branches in its exercise of power. Nevertheless, the Court cannot shrink from its constitutional duty because of a lack of precise guidelines. *See Landwehr v. United States (In re Miller),* 485 F.2d 74 (5th Cir. 1973), *cert. denied,* 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974).

Congress has provided an intricate scheme within which bankruptcy disputes can be brought to just conclusions.[11] Congress has authorized the courts to make provisions for procedural matters. The inherent equitable power of the courts is in itself a demand that substantial justice be done. Therefore, pursuant to its equitable powers the United States District Court for the Northern District of Texas adopted the Local Rule Concerning Bankruptcy Cases and Proceedings to achieve substantial justice. Pursuant to this Local Rule and, alternatively, pursuant to its inherent equitable powers, this Court referred *In re Braniff* to the bankruptcy judge.

In the courtroom of the United States Court of Appeals for the Fifth Circuit in Fort Worth, where this Court makes its attempt at dispensing substantial justice,

one quote is inscribed in gold behind the bench of the Court:

### REASON IS THE LIFE OF THE LAW NAY, THE COMMON LAW ITSELF IS NOTHING ELSE BUT REASON

If ever a case came before this Court commanding that Reason be sought—and that Reason be applied to the ends of Justice—this is that case.

### IV. *Referral of the Braniff Bankruptcy Proceeding to the Bankruptcy Judge*

█ The referral of the case involved in this dispute occurred immediately upon expiration of the Supreme Court's stay of *Marathon.*[12] Having determined the validity of the Local Rule adopted by the judges of the Northern District of Texas, it was not necessary to take any further action to have this case referred to the bankruptcy judge. Counsel for American Airlines, however, questioned the validity of the manner by which the judges adopted the Rule and the validity of the Rule's all-encompassing effect. In light of this challenge to the Rule, the Court chose to take additional action to protect the *Braniff* proceedings.

*In re Braniff* is an exceptional case,[13] and this Court determined that no effort should be spared in providing for a speedy and valid conclusion. Therefore, the Court withdrew the case, pursuant to the Local Rule,[14] found exceptional circumstances in this case, then referred the case to the Honorable E. John Flowers, Bankruptcy Judge for the Northern District of Texas, both under the provisions of the Local Rule and in the alternative, under the Court's equitable powers.[15] Judge Flowers is limited in his conduct of the case by provisions identical to those set forth in the Local Rule. Thus, any matter which could not

---

ness, and right dealing .... the object of which is to render the administration of justice more complete, by affording relief where the courts of law are incompetent to give it ....

Black's Law Dictionary 484 (5th ed. 1979).

11. *See* note 6 *supra.*

12. *See* note 1 *supra.*

13. *See In re Braniff,* Misc. No. 4–221–E, at 2 (N.D.Tex. Jan. 14, 1983).

14. Were the Local Rule invalid, the case would have been properly in this Court. *See* I. *supra.*

15. *See* III. *supra.*

constitutionally be decided by a non-Art. III judge, *see Marathon,* will not be decided by Judge Flowers.[16]

Continued validity of section 1471(a) and (b) would grant broad jurisdiction to the federal district court. Only matters that may be decided by a non-Art. III judge, however, were referred by the Court to the bankruptcy judge for final determination. This Court will make the final determination in all other matters. This action corrects the constitutional problem encountered in *Marathon.* If jurisdiction is based solely on sections 1331, 1332 and 1334,[17] the jurisdiction of this Court would not be as broad as under section 1471. The reference to the bankruptcy judge would include at least "all matters and proceedings in bankruptcy." Any case "related to" the bankruptcy proceeding, although referred to the bankruptcy judge, will receive final determination in this Court, as clearly set forth in the limits on Judge Flowers' authority. *See In re Braniff,* Misc. No. 4–221–E, at 3 (N.D.Tex. Jan. 14, 1983); Local Rule, sec. (d)(3)(B).

It would be grossly unfair to all parties involved in bankruptcy matters if no Court exercised jurisdiction over these cases. Billions of dollars, as well as thousands of potential jobs may be lost, and the congressional intent to provide bankruptcy protection would be subverted, if all bankruptcies were abruptly halted. Clearly, Congress has not only shown its intent to create a two-tiered bankruptcy system, but also has provided the legislation by which this Court can allow the bankruptcy judge to exercise some of this Court's jurisdiction. In addition, equity demands, and makes provision for reference of cases in a posture similar to *Braniff.*

Judge Flowers has invested innumerable hours in reviewing the facts, circumstances and arguments in this case. To bring the case into the District Court now would mean the Court would start in the middle of the case without the benefit of Judge Flowers' admittedly unique expertise, obtained in the past eight months of *In re Braniff* proceedings. Although this Court could reserve the entire *In re Braniff* bankruptcy for its own determination, to do so would inevitably lead to some delay while the Court reviews the case merely to obtain the knowledge that Judge Flowers already possesses.[18]

Therefore, in order to protect the rights of creditors, stockholders, and all other parties who have depended on the bankruptcy laws' protection, and in order to provide speedy resolution of bankruptcy disputes, the Court has exercised its powers under congressional authority and under its inherent equitable power so that congressional intent may be implemented. This provision for bankruptcy cases (under the Local Rule) and for *Braniff* in particular (under the Local Rule and the inherent equitable powers of this Court) will allow orderly and final conclusion of all bankruptcy cases and proceedings.[19]

## ORDER

This case came before the Court on a motion to revoke the reference to United

---

**16.** Local Rule of the Northern District of Texas Concerning Bankruptcy Cases and Proceedings, Dec. 21, 1982, sec. (d)(3)(B).

**17.** The automatic stay provision enacted by Congress, 11 U.S.C. § 362 still operates to halt most proceedings against debtors. Arguably, any suit to lift the stay is a federal question and cognizable under 28 U.S.C. § 1331.

**18.** The excellent consideration of this case by Judge Flowers is reflected in the speedy and orderly manner in which the case has proceeded at all levels. That this matter came before the Court on a motion filed on January 11, 1983, which the Court heard on January 13, and disposed of by its Order of January 14 indicates that no undue delay has resulted from district court review of bankruptcy matters. Even *In re Braniff*—which certainly has a potential above the vast majority of bankruptcy matters to cause problems—has not been unduly delayed.

**19.** During oral argument before this Court on Jan. 13, 1983, counsel for American Airlines also raised questions concerning the power of a bankruptcy court to make rulings affecting Civil Aeronautics Board proceedings. That issue was not addressed by counsel for American Airlines in the brief submitted to this Court, was not addressed by opposing counsel during oral argument, and is not addressed by this Court's opinion.

States Bankruptcy Judge John Flowers of *In re Braniff Airways, Inc., et al.,* Fort Worth Bankruptcy Division Case No. 4–82–00369. After considering the motion, brief and oral arguments of counsel, the Court makes the following rulings:

1. The Local Rule of the Northern District of Texas Concerning Bankruptcy Cases and Proceedings adopted by the United States District Court for the Northern District of Texas on December 21, 1982, is constitutional and valid.

2. The Court has jurisdiction over bankruptcy matters and proceedings, including this case, pursuant to sections 1331, 1332, 1334 and 1471 of Title 28 of the United States Code.

3. To avoid any possible jurisdictional attack based on the adoption and promulgation of the Local Rule, and in order to provide certainty in the resolution of this exceptional and complicated case, the reference of this case to Bankruptcy Judge Flowers is hereby withdrawn.

4. The Court finds that there are exceptional conditions and circumstances in *In re Braniff Airways, Inc.,* including, but not limited to the following:

The case was filed on May 13, 1982, and has been through eight (8) months of proceedings before the Honorable John Flowers.

Braniff is the only major airline to go into Chapter 11 bankruptcy reorganization.

The debtor, Braniff, has approximately $460 million in assets and $1.2 billion in debts.

Some of this debt is publicly-held. Braniff is a publicly-held corporation. In fact, Braniff has more than 75,000 creditors and shareholders.

More than 100 lawyers are already involved in these proceedings.

There is much equipment, formerly used by the debtor, now sitting idle.

The most exceptional circumstance is that Judge Flowers has dedicated eight months of work to this case. Thus, he has singular knowledge and expertise as to the facts and law in this most complicated case.

Although each of these facts was not specifically presented in the motions, briefs and arguments before this Court, the Court has taken judicial knowledge of these and other matters on file in the Bankruptcy Clerk's Office.

5. It would be a travesty of justice for this Court to leave unprotected the rights of creditors, shareholders and interested parties. Justice demands that this case quickly proceed to an orderly and final conclusion.

6. Therefore, pursuant to this Court's statutory and general *equitable* powers, and the Federal Rules of Civil Procedure, and due to the exceptional circumstances in this case, the Court hereby ORDERS that the entire matter of *In re Braniff Airways, Inc., et al.,* to the extent this Court has jurisdiction, is referred to the Honorable John Flowers Bankruptcy Judge for the Northern District of Texas, Fort Worth Division. The powers and functions to be exercised by Judge Flowers under this reference are identical to those delineated in the Local Rule of the Northern District of Texas Concerning Bankruptcy Cases and Proceeding adopted on December 21, 1982.

The Court reserves the right to enter further findings on this matter.