**In re COLOR CRAFT PRESS, LTD., a Utah limited partnership, Debtor.**

**COLOR CRAFT PRESS, LTD., a Utah limited partnership, Plaintiff,**

v.

**NATIONWIDE SHOPPER SYSTEMS, INC., Defendant.**

**In re Kent D. RICHARDSON and F. Nadine Richardson, Debtors.**

**Duane H. GILLMAN, Trustee of the estate of Kent D. and F. Nadine Richardson, Plaintiff,**

v.

**PRESTON FAMILY INVESTMENT COMPANY, and First Interstate Bank of Utah, Defendants.**

Bankruptcy Nos. 81M–03184, 82C–00736. Civil Proceeding Nos. 82PM–0974, 82PC–0746.

Civ. Nos. C 83–0140J, C 83–0139J.

United States District Court, D. Utah, C.D.

Feb. 22, 1983.

---

## MEMORANDUM OPINION and ORDER

JENKINS, District Judge.

These cases were filed in the office of the Clerk of the Bankruptcy Court of and for the United States District Court for the District of Utah. The defendant in each case brought a motion to dismiss the action from the bankruptcy court for lack of subject matter jurisdiction, challenging the constitutionality of an Interim Rule adopted by the United States District Court of Utah, governing the administration of certain bankruptcy matters.[1] Relying on *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (hereafter "Marathon"), each of the bankruptcy judges granted each respective defendant's motion to dismiss. The orders of dismissal, however, were stayed and the matters certified to the District Court for review. The cases were consolidated for the purpose of review.

The question for review is whether the dismissals for lack of subject matter jurisdiction were providently granted. After careful consideration of the arguments made and briefs submitted, we hold that they were not.

Although the bankruptcy opinions 27 B.R. 392; 27 B.R. 407, are scholarly and well-written, it appears that one analytic and one historic matter were overlooked. Analytically, there is a two-step grant of power under the provisions of the Bankruptcy Reform Act of 1978[2]—one to the United States District Court and one to the Bankruptcy Court. The bankruptcy opinions imply that these jurisdictional grants are so intertwined that the invalidation of step two in some fashion invalidates step one. That is not so. The jurisdictional provision of the Bankruptcy Reform Act, as codified, provides, in part:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

Duane H. Gillman and Judith Boulden, Salt Lake City, Utah, for trustee for the estate of Richardson.

Stephen T. Preston, Salt Lake City, Utah, for Preston Family Inv. Co.

Duke Wahlquist and Roy Williams, Salt Lake City, Utah, for First Interstate Bank & Trust Co.

William G. Fowler and Ronald Goss, Salt Lake City, Utah, for Color Craft Press, Ltd.

Robert A. Bentley, Salt Lake City, Utah, for Nationwide Shopper System, Inc.

Before ANDERSON, Chief Judge, JENKINS, and WINDER, District Judges, and CHRISTENSEN, Senior Judge.

---

1. The full text of the Interim Rule is set out in Appendix A, annexed hereto.

2. Pub.L. No. 95–598, Section 241, 92 Stat. 2668 (1978) (codified at 28 U.S.C. §§ 1471–82).

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

28 U.S.C. § 1471 (Appendix III). Under § 1471, district courts and courts of bankruptcy were given concurrent jurisdiction over matters under title 11. The *Marathon* decision invalidated only one tier of that jurisdictional grant. The plurality in *Marathon* held that "Art. III bars Congress from establishing legislative courts to exercise jurisdiction over all matters related to those arising under the bankruptcy laws." —— U.S. ——, ——, 102 S.Ct. 2858, 2874, 73 L.Ed.2d 598. The Court held that the broad jurisdictional grant to hear matters "arising in or related to a case under title 11" includes the power to adjudicate "private rights". The *Marathon* plurality found that such power must be vested in a court having the attributes of independence prescribed by Article III of the United States Constitution, which provides:

> The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

U.S.Const. art. III, § 1. The analytical difficulty with the bankruptcy opinions is that they read *Marathon* too broadly. The question is not whether the bankruptcy courts have jurisdiction under § 1471. The Supreme Court held that they do not. As Article I courts, the bankruptcy courts lack the constitutional attributes necessary to exercise Article III power. Nowhere in the *Marathon* opinion, however, did the Court suggest that an Article III court could not exercise Article III power. The first prong of the two-step jurisdictional grant is valid. The United States District Courts retain original jurisdiction over all cases under title 11. 28 U.S.C. § 1471(a) & (b).

The bankruptcy opinions argue that the Supreme Court refused to divide § 1471 into valid and invalid provisions, finding the jurisdictional grant unconstitutional in toto. We disagree. The *Marathon* plurality discussed severability in the context of separating the Article I court's power to hear matters "arising under title 11" from the power to hear those "arising in or related to a case under title 11." It is that distinction the Court refused to make in *Marathon*, not the readily-made distinction between the powers of Article I and Article III courts. Although the *Marathon* Court never discussed whether the United States District Courts are competent to exercise the broad jurisdictional grant of the Act, not one of the Article I deficiencies is present in the district courts.

The historical matter that the bankruptcy court's analysis seems to overlook is the effective date of the Reform Act. The United States Bankruptcy Court's prospective independence from the United States District Court is not an existing fact in 1983. The amendments made by Title II of the Reform Act do not take complete effect until April 1, 1984.[3] Until that time the statute provides for a transition period. During the five-year experimental period— the transition period—Congress built in some jurisdictional insurance. First, during the transition period, the bankruptcy court remained an adjunct of the district court. Second, the grant of jurisdiction to the Article III district court to hear cases was expanded by the 1978 Act. Further, during the interim, jurisdiction in the district

---

3. Pub.L. No. 95–598, Title IV, § 402(b), Nov. 6, 1978, 92 Stat. 2682–2688. *Cf. id.,* § 405(b):

> *During the transition period,* the amendments made by *sections 241,* 243, 250, and 252 of this Act shall apply to the courts of

bankruptcy continued by section 404(a) of this Act the same as such amendments apply to the United States bankruptcy court established under section 201 of this action. [Emphasis added.]

court, as expanded, remained intact by virtue of 28 U.S.C. § 1334, which states:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of *all matters and proceedings* in bankruptcy.[4] [Emphasis added.]

In no sense did *Marathon* attack that investment of ongoing original jurisdiction in the United States District Courts. It attacked only the second step—the investment in the bankruptcy court—of a two-step grant. It invalidated the jurisdiction of the bankruptcy court in both the transitional and the final stage, relating to the exercise of power by it in certain phases of the bankruptcy and reorganization process. The opinion did not diminish the power of the United States District Court. That structure remained unscathed. The district court has all of the bankruptcy power it ever had because its authority over bankruptcy matters remains as jurisdictional insurance until April 1, 1984. Full separation of the bankruptcy court from the district court was not to occur until that time. Congress, being concerned with how the new system worked and being apprehensive that what happened, might happen, wisely provided that the district court bankruptcy power did not expire until the five-year bankruptcy experiment had been concluded. The events have vindicated the good sense of Congress.

*Marathon* is concerned with separation of powers in the classic sense. It said that a legislative instrumentality, the Article I court, could not exercise, by mandatory delegation, Article III power absent Article III attributes. Nowhere in *Marathon* did the Supreme Court hold that an Article III court, the United States District Court, could not exercise bankruptcy power. One cannot find such from the fact it stayed its order to allow Congress to make such changes as it saw fit. The original jurisdiction of the United States District Court over bankruptcy matters is not limited by the language of § 241(a) of the Act. That section has been held unconstitutional as to bankruptcy courts, in contrast to United States District Courts sitting in bankruptcy matters. 28 U.S.C. § 1334, which gives district courts original jurisdiction over "all matters and proceedings in bankruptcy" remains fully intact.

The district courts' original jurisdiction, likewise, is unimpaired by the language of § 405 of the Bankruptcy Reform Act. Section 405 is the transition provision that deals with the disposition of matters during the period from October 1, 1979 to April 1, 1984. The bankruptcy opinions suggest that the mandatory delegation of § 405 deprives the district courts of all jurisdiction in bankruptcy matters. However, to the extent that § 405 mandates a redelegation of district court power to Courts of Bankruptcy (Article I courts) it is as unconstitutional as the direct delegation in § 241(a), for the reasons set forth in *Marathon*. While the district court may *sua sponte* refer matters to the Courts of Bankruptcy, Congress may not compel delegation, other than to an Article III court, without colliding with constitutional principles of separation of powers.

In short, the jurisdictional vacuum claimed to exist does not in fact exist. The bankruptcy power, and particularly the Article III power denied the bankruptcy judges, is alive, well, and residing in the United States District Court, which through its Interim Rule calls upon the existing bankruptcy structure to assist in its exercise. Such exercise is under the ultimate control and supervision of the United States District Court. The rule enacted by this court is concerned with methodology for accomplishing a district court duty. With all vestiges of mandated delegation removed, all civil proceedings arising under title 11 are district court matters. The bankruptcy court and staff are enlisted, through the rule, to assist the district court in resolving district court civil proceedings. The type of referral incorporated in the Interim Rule is not new. It is often and historically used with special masters, general masters, and magistrates. The administrative device to effectively carry out the

---

4. Section 238 of the Act which replaces the district courts' § 1334 original jurisdiction with appellate jurisdiction, remains wholly dormant until April 1, 1984. *Id.,* § 402(b).

district court duty and power is the judicial, elective order of reference. Such a device did yeoman service in the bankruptcy field from at least 1898 until 1978 and does yeoman service in other fields as well.

Through the Interim Rule the district court can take advantage of the existing judicial and administrative structure of the United States Bankruptcy Courts. Who better to have matters referred to than those with in-place expertise and administrative staffs? As Edward H. Warren once said:

We seek to build a juristic structure with foundations as solid, and with lines as simple and stately, and with vistas as spacious as those befitting a colonial mansion.

E. Warren, The Rights of Margin Customers Against Wrongdoing Stockbrokers, 9 (Plimpton 1941). In this particular area, although the mansion still stands, Congress and, perhaps, the courts have some repairs to make. The rule adopted by this court on December 24, 1982, similar in scope and function to rules around the country,[5] is a device by which the power of the United States District Court in the field of bankruptcy can be exercised until those repairs are made.

The bankruptcy judges to whom the matters are referred are not exercising invalid power. They are acting for and on behalf of the United States District Courts and are subject always to the ultimate exercise of power by the district court judges. This is consistent with the jurisdictional grant to the United States District Court through the enactment of § 1334. It allows the power to be exercised by an officer of the court to whom the matter has been referred, it utilizes existing staff and expertise, and provides for an orderly administration of cases and controversies until such time as Congress acts, if it chooses to act.

The predicted chaos headlined in the press and proclaimed on the evening news exists only in the preceptions of some, but such chaos exists neither in the court struc-

ture nor in its function, when properly understood. The statutes, as implemented by the rule, provide a rational methodology of dealing with the needs of bankruptcy petitioners and related matters. The rule is part of the solution, not part of the problem. Instead of separate jurisdictional houses, freestanding and alone, we have a judicial condominium which, if all work at it, will provide the necessary housing and services for bankruptcy and reorganization matters until Congress acts.

It is always appropriate for a court to examine the footings of its own jurisdiction. Here, the bankruptcy court, rather than examining the basis of its own jurisdiction, suggested a re-examination of our own. We have done that. Upon re-examination of our own jurisdiction, we reaffirm our satisfaction with the jurisdictional basis for the rule. We felt it appropriate when we enacted it. We feel it is appropriate now.

Thus, for the reasons herein set forth, it is the opinion of the court that the orders of dismissal granted by the bankruptcy judges, footed on lack of subject matter jurisdiction, were improvidently granted. The orders are vacated and the matters are again referred to the bankruptcy court to process the same in accordance with the provisions of the rule, as amended, dated December 24, 1982.

With counsel's consent, the briefs have been reviewed and oral argument heard by all of the judges of this court. I am authorized to state that all of the judges concur in this opinion.

IT IS SO ORDERED.

### APPENDIX A

#### IN THE UNITED STATES DISTRICT COURT

#### FOR THE DISTRICT OF UTAH

#### RULE

(a) Emergency Resolution

The purpose of this rule is to supplement existing law and rules in respect to the

---

5. Similar rules were recently upheld in In re Northland Point Partners, 26 B.R. 860 (Dist. Ct.E.D.Mich.1983), and In re Braniff Airways, Inc., et al., 27 B.R. 231 (Dist.Ct.N.D.Texas 1983).

authority of the bankruptcy judges of this district to act in bankruptcy cases and proceedings until Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982), or until March 31, 1984, whichever first occurs.

The judges of the district court find that exceptional circumstances exist. These circumstances include: (1) the unanticipated unconstitutionality of the grant of power to bankruptcy judges in section 241(a) of Public Law 95–598; (2) the clear intent of Congress to refer bankruptcy matters to bankruptcy judges; (3) the specialized expertise necessary to the determination of bankruptcy matters; and (4) the administrative difficulty of the district courts' assuming the existing bankruptcy caseload on short notice.

Therefore, the orderly conduct of the business of the court requires this referral of bankruptcy cases to the bankruptcy judges.

(b) Filing of bankruptcy papers

The bankruptcy court constituted by § 404 of Public Law 95–598 shall continue to be known as the United States Bankruptcy Court of this district. The Clerk of the Bankruptcy Court is hereby designated to maintain all files in bankruptcy cases and adversary proceedings. All papers in cases or proceedings arising under or related to Title 11 shall be filed with the Clerk of the Bankruptcy Court regardless of whether the case or proceeding is before a bankruptcy judge or a judge of the district court, except that a judgment by the district judge shall be filed in accordance with Rule 921 of the Bankruptcy Rules.

(c) Reference to Bankruptcy Judges

(1) All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district.

(2) The reference to a bankruptcy judge may be withdrawn by the district court at any time on its own motion or on timely motion by a party. A motion for withdrawal of reference shall not stay any bankruptcy matter pending before a bankruptcy judge unless a specific stay is issued by the district court. If a reference is withdrawn, the district court may retain the entire matter, may refer part of the matter back to the bankruptcy judge, or may refer the entire matter back to the bankruptcy judge with instructions specifying the powers and functions that the bankruptcy judge may exercise. Any matter in which the reference is withdrawn shall be reassigned to a district judge in accordance with the court's usual system for assigning civil cases.

(3) Referred cases and proceedings may be transferred in whole or in part between bankruptcy judges within the district without approval of a district judge.

(d) Powers of Bankruptcy Judges

(1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:

(A) a proceeding to enjoin a court;

(B) a proceeding to punish a criminal contempt—

(i) not committed in the bankruptcy judge's actual presence; or

(ii) warranting a punishment of imprisonment;

(C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge.

(D) A trial by jury.

Those matters which may not be performed by a bankruptcy judge shall be transferred to a district judge.

(2) Except as provided in (d)(3), orders and judgments of bankruptcy judges shall be effective upon entry by the Clerk of the Bankruptcy Court, unless stayed by the bankruptcy judge or a district judge.

(3)(A) Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings include, but are not limited to, claims brought by the estate against parties who have not filed claims against the estate. Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; allowance of and objection to claims against the estate; counterclaims by the estate in whatever amount against persons filing claims against the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings to set aside preferences and fraudulent conveyances; proceedings in respect to lifting of the automatic stay; proceedings to determine dischargeability of particular debts; proceedings to object to the discharge; proceedings in respect to the confirmation of plans; orders approving the sale of property where not arising from proceedings resulting from claims brought by the estate against parties who have not filed claims against the estate; and similar matters. A proceeding is not a related proceeding merely because the outcome will be affected by state law.

(B) In related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge.

(e) District Court Review

(1) A notice of appeal from a final order or judgment or proposed order or judgment of a bankruptcy judge or an application for leave to appeal an interlocutory order of a bankruptcy judge, shall be filed within 10 days of the date of entry of the judgment or order or of the lodgment of the proposed judgment or order. As modified by sections (e) 2A and B of this rule, the procedures set forth in Part VIII of the Bankruptcy Rules apply to appeals of bankruptcy judges' judgments and orders and the procedures set forth in Bankruptcy Interim Rule 8004 apply to applications for leave to appeal interlocutory orders of bankruptcy judges. Modification by the district judge or the bankruptcy judge of time for appeal is governed by Rule 802 of the Bankruptcy Rules.

(2)(A) A district judge shall review:

(i) an order or judgment entered under paragraph (d)(2) if a timely notice of appeal has been filed or if a timely application for leave to appeal has been granted;

(ii) an order or judgment entered under paragraph (d)(2) if the bankruptcy judge certifies that circumstances require that the order or judgment be approved by a district judge, whether or not the matter was controverted before the bankruptcy judge or any notice of appeal or application for leave to appeal was filed; and

(iii) a proposed order or judgment lodged under paragraph (d)(3), whether or not any notice of appeal or application for leave to appeal has been filed.

(B) In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order or judgment.

(3) When the bankruptcy judge certifies that circumstances require immediate review by a district judge of any matter subject to review under paragraph (d)(2), the district judge shall review the matter and enter an order or judgment as soon as possible.

(4) It shall be the burden of the parties to raise the issue of whether any proceeding is a related proceeding prior to the time of the entry of the order of judgment of the district judge after review.

(f) Local Rules

In proceedings before a bankruptcy judge, the local rules of the bankruptcy court shall apply. In proceedings before a judge of the district court, the local rules of the district court shall apply.

(g) Bankruptcy Rules and Title IV of Public Law 95–598

Courts of bankruptcy and procedure in bankruptcy shall continue to be governed by Title IV of Public Law 95–598 as amended and by the bankruptcy rules prescribed by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075 and limited by SEC. 405(d) of the Act, to the extent that such Title and Rules are not inconsistent with the holding of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982).

(h) Effective Date and Pending Cases

This rule shall become effective December 25, 1982, and shall apply to all bankruptcy cases and proceedings not governed by the Bankruptcy Act of 1898 as amended, and filed on or after October 1, 1979. Any bankruptcy matters pending before a bankruptcy judge on December 25, 1982 shall be deemed referred to that judge.

Dated this 24 day of December, 1982.

BY THE COURT:

/s/   Aldon J. Anderson
ALDON J. ANDERSON,
CHIEF JUDGE

/s/   Bruce S. Jenkins
BRUCE S. JENKINS,
ASSOCIATE JUDGE

/s/   David K. Winder
DAVID K. WINDER,
ASSOCIATE JUDGE

/s/   A. Sherman Christensen
A. SHERMAN CHRISTENSEN,
SENIOR JUDGE