**FOREMAN INDUSTRIES, INC., et al., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, et al., Defendants.**

No. C-3-83-126.

United States District Court,
S.D. Ohio, W.D.

Oct. 14, 1983.

David C. Greer, Howard Krisher, Dayton, Ohio, for plaintiff Foreman Industries, Inc.

Stephen Wasinger, Asher Rabinowitz, Detroit, Mich., William P. Smith, Dayton, Ohio, Sp. Counsel, for First Nat. Bank.

William J. Parker, Bowling Green, Ky., for defendant Gen. Motors/Bowling Green.

Robert G. Stachler, Thomas Y. Allman, Cincinnati, Ohio, Joseph P. Buchanan, Dayton, Ohio, for defendant Gen. Motors Corp.

Jerry F. Safford, Bowling Green, Ky., Richard G. Snell, Dayton, Ohio, for defendant City of Bowling Green, Ky.

## DECISION AND ENTRY OVERRULING DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO SEVER OR FOR SEPARATE TRIALS OF THE CLAIMS AGAINST DEFENDANT BOWLING GREEN AND TO TRANSFER THOSE CLAIMS TO THE WESTERN DISTRICT OF KENTUCKY; LEAVE GRANTED TO DEFENDANTS TO RENEW MOTION TO SEVER OR FOR SEPARATE TRIALS IF AND WHEN THE RECORD IS MORE FULLY DEVELOPED

RICE, District Judge.

The captioned cause is presently before the Court on the motion of each Defendant to dismiss on the ground that the Bankruptcy Court wherein this matter was originally filed lacked subject matter jurisdiction and was, therefore, without power to transfer the present action to this Court. Thus, each Defendant moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), on the ground that this Court lacks subject matter jurisdiction. Each Defendant also moves to dismiss Plaintiffs' Thirteenth through Seventeenth Claims for Relief pursuant to Rule 12(b)(3) on the alleged basis that venue is improper in this district as to Defendant Bowling Green, Kentucky. In addition, the Defendant City of Bowling Green, Kentucky, moves to dismiss on the ground that this Court does not have personal jurisdiction over it.

In the alternative, with reference to the motion to dismiss the Thirteenth through Seventeenth claims, each Defendant moves pursuant to Fed.R.Civ.P. 21 and 42(b) to have this Court sever from the present action these claims for relief and to transfer these claims to the Western District of Kentucky.

Based upon the authorities cited and the reasoning set forth below, the Court overrules Defendants' motion in all respects, granting leave to Defendants to renew their motion to sever pursuant to Rule 21 or for separate trials pursuant to Rule 42(b), if and when the record is more fully developed.

## I. *Background*

Plaintiffs in this matter are Foreman Industries ("Foreman"), an Ohio corporation with its principal place of business in Dayton, Ohio, and the First National Bank ("the Bank"), a national banking association with its principal place of business also in Dayton, Ohio. (Doc. # 5, First Amended Complaint, ¶¶ 1 & 2).

Defendants in this matter are General Motors Corporation, a Delaware Corporation, whose principal place of business is not established in the record (Doc. # 5, First Amended Complaint, ¶ 3; Doc. # 9, Answer of General Motors to First Amended Complaint, ¶ 3) and the City of Bowling Green, Kentucky. (Doc. # 5, First Amended Complaint, ¶ 3).

Foreman, a construction company, is a debtor in possession with a Chapter 11 reorganization proceeding currently pending in the Bankruptcy Court of this district (Case No. 3–81–3005). The Bank is a secured creditor of Foreman, with a security interest in all of Foreman's accounts receivables and general intangibles. (Doc. # 5, First Amended Complaint, ¶ 6).

The present action was initiated by Plaintiffs to seek compensatory and punitive damages for various alleged breaches of contract and warranty, misrepresentations and negligence in regard to contracts entered into between Foreman and the Defendants. Prior to filing its Chapter 11 proceeding, Foreman in 1979 and 1980 entered into certain contracts with the Chevrolet Motor Division of General Motors (Doc. # 10, Ex. A, Affidavit of J.F. Kispert, ¶ 3) and the City of Bowling Green, Kentucky, (Doc. # 10, Ex. B, Affidavit of Roger M. Hurst, ¶¶ 5 & 6), under which Foreman was to provide construction services in two projects involving GM facilities. One project, involving the contracts with the Chevrolet Motor Division of General Motors, the "Moraine project", concerned services Foreman was to render in connection with converting a former Frigidaire facility in Moraine, Ohio, into a diesel engine plant and a truck assembly plant. (Doc. # 10, Ex. A, Affidavit of J.F. Kispert, ¶¶ 1, 3). The other project, the "Bowling Green project", concerned work Foreman was to provide in the construction of a Corvette assembly facility located in Bowling Green. (Doc. # 10, Ex. B, Affidavit of Roger M. Hurst, ¶¶ 1, 2). According to the matters filed herein, location of the Corvette facility in Bowling Green stemmed from the offer of Bowling Green to participate in the financing of the facility (*Id.*, ¶¶ 2 & 3) by issuing industrial building revenue bonds. (Doc. # 10, Ex. B, June 5, 1979 correspondence from Bowling Green to General Motors, ¶ 1). General Motors Corporation leases the plant from Bowling Green and the rental payments are to continue until the principal and interest on the bonds and the associated financing costs have been paid in full. (Doc. # 10, Ex. B, Lease Agreement).

The complaint in this matter sets forth a number of allegations concerning the conduct of GM with respect to these two projects. Bowling Green is alleged to be but a nominal party in interest in the contract regarding the Bowling Green Project. General Motors is alleged to have been responsible for all of the "financing, designing, scheduling, constructing and coordinating the Bowling Green plant." (Doc. # 5, First Amended Complaint, ¶¶ 69 & 71). The real dispute, then, with regard to both projects, as set out in the First Amended Complaint, is with GM who is alleged, *inter alia,* to have solicited bids for work when plans for the projects were still "defective and incomplete;" to have disrupted and delayed Foreman's work on the projects through various omissions and negligent and intentional acts; to have breached express and implied warranties with respect to the adequacy and suitability of the plans

and specifications for Foreman's work; to have assured compensation to Foreman for costs associated with the delays, disruptions and changes and subsequently to have refused to pay the reasonable value of the work; and to have, through a series of negligent and intentional acts, placed Foreman in a position of financial distress entitling Foreman to over eleven million dollars in compensatory damages and twenty million dollars in punitive damages. (Doc. # 5, First Amended Complaint).

Originally, Plaintiffs filed this action in the Bankruptcy Court for this district wherein Foreman's Chapter 11 reorganization is pending. Plaintiffs alleged that the Court had jurisdiction pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship) and, apparently by way of argument, contended that the Bankruptcy Court had jurisdiction pursuant to the Interim Rule (Emergency Resolution) adopted in this district on December 25, 1982, as a temporary procedural device for continued operation of the bankruptcy system subsequent to the Supreme Court's ruling in *Northern Pipeline Construction Co. v. Marathon Pipeline,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). (This decision and rule are discussed, *infra,* in Section II). Plaintiffs also asserted that venue was properly laid in this district pursuant to 28 U.S.C. § 1391(a), the venue provision for actions based solely on diversity.

In response to the filing of this complaint, each Defendant moved to dismiss claiming that the Court lacked subject matter jurisdiction over the controversy. As a second ground for dismissal of the claims against Defendant Bowling Green, each Defendant contended that venue was improper as to said Defendant. The Defendant, Bowling Green, moreover, contended that the Court lacked personal jurisdiction over it.

In the alternative, each Defendant moved to sever those claims dealing with the Bowling Green project and to transfer that part of the action to the Western Division of Kentucky.

In an order filed January 19, 1973, the Bankruptcy Court transferred the action to this Court, apparently because a jury trial had been requested and the interim rules under which this district's bankruptcy proceedings are presently being conducted require such transfer to the district court of cases to be tried to a jury. (Interim Rule (d)(1)(D)). In making the transfer, the Bankruptcy Court did not rule on Defendants' motions, but rather reserved their objections to jurisdiction and venue and Plaintiffs' right to respond to these motions. *In re Foreman Industries,* Case No. 3–81–03005, AP No. 3–82–0644 (Bankr.S.D. Ohio, Jan. 19, 1983).

Plaintiffs subsequently filed an amended complaint alleging jurisdiction in this Court pursuant to 28 U.S.C. 1332(a) (diversity of citizenship), 28 U.S.C. 1334 (Bankruptcy matters and proceedings), and the Emergency Resolution (Interim Rule) adopted by this district. Plaintiffs also alleged that venue was properly laid in this district pursuant to 28 U.S.C. § 1391(a) (venue provision when jurisdiction is based solely on diversity). By way of argument, Plaintiffs also assert venue is proper under 28 U.S.C. § 1473 (venue of proceedings arising under or related to cases under Title 11) and 28 U.S.C. §§ 1332(b) (venue of actions not based solely on diversity) and (c) (venue of actions against corporations).

Each Defendant renewed its objections to the Court's subject matter jurisdiction over the controversy and Bowling Green renewed its claim of lack of personal jurisdiction over it. Each Defendant objected that venue was improper as to the Bowling Green claims or at the very least that these claims should be severed and transferred to the Western District of Kentucky. The basic thrust of Defendants' arguments follows:

1. The Supreme Court decision in *Northern Pipeline Construction Co. v. Marathon Pipeline,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) rendered the jurisdictional grant in the Bankruptcy Reform Act unconstitutional. Therefore, the Bankruptcy Court lacked subject matter jurisdiction over the contro-

versy and could not transfer it to this Court. Similarly, this Court does not have jurisdiction over this matter because the *Northern Pipeline* decision also invalidated the Bankruptcy Reform Act's jurisdictional grant to the district courts. Moreover, Defendants contend, this Court should not rely on the interim rule (discussed below) or 28 U.S.C. 1334 as conferring the requisite subject matter jurisdiction until the Supreme Court has ruled on the constitutionality of this course. Defendants are concerned about undertaking what may be protracted and expensive litigation which may be rendered for naught if, in the interim, the Supreme Court should find the interim rule or specific other Bankruptcy Reform Act provisions unconstitutional.

2. Because *Northern Pipeline* invalidated the jurisdictional grant to the bankruptcy courts, the nationwide service of process provision of Bankruptcy Rule 704(f)(1) [1] was also rendered invalid and could not be relied upon to gain personal jurisdiction over Bowling Green. It is also asserted that Ohio's "long arm" statute embodied in Ohio Revised Code § 2307.382,[2] provides no basis for extending personal jurisdiction over Bowling Green.

3. Defendants objections to venue focus on their belief that Plaintiffs in fact have two distinct and separate causes of action that they have impermissibly joined together. Defendants first argue that venue with respect to the Bowling Green claims is improperly laid in this district. Defendants also contend that the claims concerning the Bowling Green project do not belong in this proceeding and that requiring Bowling Green to defend this action in this district would be burdensome and expensive and, therefore, that part of Plaintiffs' action that deals with the Bowling Green Project should be transferred to the Western District of Kentucky.

II. *Introduction*

Much of the controversy over jurisdiction and venue in the present matter stems from

---

1. Bankruptcy Rule 704(f)(1) provides:
   (f) Territorial Limits of Effective Service.
   (1) The summons, together with the complaint and notice of trial or pre-trial conference, and all other process except a subpoena may be served anywhere within the United States. "United States," as used in this subdivision, includes the Commonwealth of Puerto Rico and the territories and possessions to which this title is or may hereafter be applicable.

2. Ohio Revised Code § 2307.382 provides:
   (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
   (1) Transacting any business in this state;
   (2) Contracting to supply services or goods in this state;
   (3) Causing tortious injury by an act or omission in this state;
   (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
   (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this

state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
   (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
   (7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.[;]
   (8) Having an interest in, using, or possessing real property in this state;
   (9) Contracting to insure any person, property or risk located within this state at the time of contracting.
   (B) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

the Supreme Court's recent ruling in *Northern Pipeline Construction Co. v. Marathon Pipeline,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), wherein, by way of a plurality opinion, the Court found the jurisdictional grant to non-Article III Bankruptcy Courts, contained in § 241(a) of the Bankruptcy Reform Act (BRA) to be unconstitutional. This provision found in 28 U.S.C. § 1471(c) was the second half of a two tiered jurisdictional framework established by Congress in the BRA of 1978. The first half of the jurisdictional grant, also contained in 241(a) of the BRA and set out in 28 U.S.C. § 1471(a) and (b) provides that:

> (a) Except as provided in subsection 1(b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

The troublesome provision that the Supreme Court found contravened the Constitution was the following section which provided that the Bankruptcy Courts were to exercise all of the jurisdiction granted to the district courts by the BRA:

> (c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

28 U.S.C. § 1471(c).

The question arising subsequent to the issuance of this opinion was whether this ruling also swept away the jurisdictional grant to the district courts contained in 28 U.S.C. §§ 1471(a) and (b) cited above. The Supreme Court determined that the effect of its decision should be stayed, in part, to give Congress the opportunity of curing the jurisdictional defects of the BRA. When Congress, however, failed to act, the Judicial Conference of the United States adopted an Interim Rule, thought to be in conformity with *Northern Pipeline,* to enable the bankruptcy system to continue to operate until Congress could act. The Interim Rule (contained in the Appendix) was subsequently adopted by the district courts in this circuit per order of the Judicial Council of the Sixth Circuit on December 21, 1982.

As recently described by the Sixth Circuit in *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983), the Interim Rule, to a degree, resurrects the old bankruptcy system wherein the district courts were the sole repositories of jurisdiction over bankruptcy cases and proceedings and referred such matters to bankruptcy courts for determination. *Id.* at 256. The Interim Rule also provides that in "related cases," defined in part as "those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court," only the district court is empowered to issue a final order, absent consent by the parties to a final determination by the bankruptcy judge. Interim Rule (d)(3)(A) and (b).

In addition, the Interim Rule provides that the BRA and related Rules shall continue to control the manner in which bankruptcy courts and procedures are conducted unless to do so would be to run afoul of the holding in *Northern Pipeline.* Interim Rule (g).

### III. *The Court's Subject Matter Jurisdiction*

Plaintiffs assert that this Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. 1332 [3] (Diversity of Citizenship), 28 U.S.C. § 1471 (cited above)

---

3. 28 U.S.C. § 1332 provides in pertinent part:
   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

       (1) citizens of different States;
       (2) citizens of a State, and foreign states or citizens or subjects thereof; and
       (3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.

and the interim rule (Appendix), or in the alternative 28 U.S.C. § 1334 which provides:

> The district courts shall have original jurisdiction, exclusive of the states, of all matters and proceedings in bankruptcy.

Plaintiffs find support for their argument in *White Motor Corp. v. Citibank*, 704 F.2d 254 (6th Cir.1983) wherein the Sixth Circuit held that *Northern Pipeline* had not found the jurisdictional grant to the district courts contained in 28 U.S.C. § 1471(a) and (b) to be unconstitutional. Moreover, the Court found that, regardless of the impact of *Northern Pipeline,* Congress had specifically left intact and delayed repeal of the jurisdictional grant contained in 28 U.S.C. § 1334 as an alternative source of jurisdiction over bankruptcy matters and proceedings. *Id.* at 260–61.

Both GM and Bowling Green contend in their original memorandum in support of their motions that the Court does not have jurisdiction over the present matter. In part, they argue that Plaintiffs originally filed this suit in the Bankruptcy Court of this district after the *Northern Pipeline* decision invalidated the jurisdictional grant to the bankruptcy courts. Defendants cite two Sixth Circuit district court cases as establishing that during the stay of the *Northern Pipeline* decision, bankruptcy courts could not exercise jurisdiction over matters involving state law issues. *See, e.g., In re Meeker,* 22 B.R. 745 (D.C.S.D. Ohio 1982); *In re White Motor Credit Corp.,* 23 B.R. 276 (D.C.N.D. Ohio 1982). Therefore, Defendants contend that the Bankruptcy Court did not have jurisdiction over the controversy and could not transfer the matter to this Court. In their memoranda filed subsequent to the Sixth Circuit's reversal of the *White Motor* case, Defendants contend that the *Northern Pipeline* decision rendered invalid the entire jurisdictional grant contained in the BRA. They also argue that the Court should not rely on the validity of the system established by the Interim Rule until the Supreme Court determines that the rule is constitutional.

▪ Turning first to the question of the Bankruptcy Court's jurisdiction and, therefore, its power to transfer the matter to this Court, the Court finds Defendants' argument without substance in light of the Sixth Circuit's ruling in *White Motor Corp.* The clear import of this decision is that the combined jurisdiction of the district and bankruptcy courts over all cases and "civil proceedings arising under title 11 or arising in or related to cases under title 11," has continued uninterrupted, albeit through an altered institutional arrangement, since the decision in *Northern Pipeline.* Prior to the *Northern Pipeline* stay being lifted on December 24, 1982, the jurisdictional provisions of the BRA remained in effect. Thus, when Plaintiffs filed their action in the Bankruptcy Court on October 1, 1982, the Bankruptcy Court had jurisdiction over the matter pursuant to 28 U.S.C. § 1471(c). When the stay was lifted, the combined effect of the continued jurisdictional grant to the district courts contained in 1471(a) and (b) and Interim Rules (c)(1) and (h) which provided for the automatic referral of "all civil proceedings . . . arising in or related to cases under Title 11," enabled the bankruptcy court to properly act with respect to the present adversary proceeding. Interim Rule (c)(1) & (h); *see also, White Motor,* 704 F.2d *supra,* at 264. Subsequently, on January 19, 1983, when the Bankruptcy Court transferred the matter to this Court, it was acting within the parameters of Interim Rule (c)(1) in disposing of a case properly referred to it by the district court having jurisdiction over the proceeding and Rule (d)(1)(D) by transferring to the district court a case which was to be tried to a jury. Once the present controversy was so transferred, this Court continued to have jurisdiction over the matter pursuant to the still valid jurisdictional grant to the district courts contained in 28 U.S.C. § 1471.

Moreover, the Court is not persuaded that it should refrain from exercising jurisdiction over all or any part of the present controversy because the Supreme Court has not yet ruled on the validity of the Interim Rule or specifically ruled on the validity of 28 U.S.C. 1471(a) and (b). Suspension of

activity in anticipation of further Supreme Court rulings that may or may not be forthcoming would lead to the chaotic situation sought to be avoided by the Judicial Conference when it adopted the Interim Rule. Furthermore, the Sixth Circuit has spoken on the matter and the facts in the present case are neither so exceptional nor unusual that they might prompt this Court to attempt to carve out an exception to the rule announced in *White Motor Corp.*

Therefore, in conformity with the holding of the Sixth Circuit in *White Motor Corp.*, to wit: "that §§ 1471(a) and (b) giving the district courts original jurisdiction in all cases under Title 11 were not affected by the Supreme Court's decision in *Northern Pipeline,* ..." the Court finds that subject matter jurisdiction over this controversy exists in this Court pursuant to 28 U.S.C. 1471(b). The Court notes that 1471(b) is the controlling provision as the present controversy involves a "proceeding ... related to cases under title 11" in that but for the pending bankruptcy, this matter would have been brought in a district or state court.

Clarifying the nature of the present controversy is important in that it points out that Plaintiffs' complete reliance on the holding of *White Motor Corp.* as establishing this Court's jurisdiction is somewhat misplaced. As stated above, the Sixth Circuit found that it had jurisdiction over the *White Motor* controversy under §§ 1471(a) and (b) *and* 28 U.S.C. § 1334. In *White Motor,* Plaintiffs were claimants against the estate of the debtor alleging products liability claims against the debtor, White Motor Corp. The Court distinguished the controversy from that presented in *Northern Pipeline,* wherein the debtor in possession had brought suit against a creditor for, *inter alia,* breaches of contract and warranty, and misrepresentation.

Proceedings such as that in *White Motor Corp.,* involving claims against the estate of the debtor for property actually or constructively within the control of the bankruptcy court, fall within the old 28 U.S.C. § 1334 "summary jurisdiction" over bankruptcy matters and proceedings. *See, In re Braniff Airways, Inc.,* 27 B.R. 231 (Bkrtcy. N.D.D.C.Tex.1983), *affirmed,* 700 F.2d 214 (5th Cir.1983). *See also, 1 Collier on Bankruptcy,* ¶ 3.02, p. 3–22 (Fifteenth Ed. 1983). In *White Motors,* therefore, reliance on § 1334 as an alternative basis for jurisdiction was appropriate.

The present controversy more closely parallels that presented in *Northern Pipeline,* i.e., a suit brought by the debtor in possession (or trustee) against third persons concerning property not within the control of the bankruptcy court. Determination of such a suit does not depend upon an interpretation of federal bankruptcy law, but rather is based on state law, and, absent the pending bankruptcy, the Plaintiffs would have pursued their remedy in a state or district court. The alternative bases for jurisdiction of such suits, once labeled "plenary proceedings", (1 *Collier on Bankruptcy,* ¶ 3.02, p. 3–22 (Fifteenth Edition, 1983)) must be found in either 28 U.S.C. § 1331 (federal question jurisdiction) or § 1332 (diversity jurisdiction). As noted by the court in *In re Braniff,* in discussing the alternative basis for jurisdiction if in fact *Northern Pipeline* also rendered unconstitutional §§ 1471(a) and (b):

> The Court must now look to 28 U.S.C. § 1331 and § 1332 for those cases which would have originated in the federal district court because of either a federal question involved or the diversity of citizenship of the parties. Those cases, now properly in the district court's jurisdiction, may be combined with the bankruptcy cases in which they arise or to which they are related for the purpose of referring both the bankruptcy "matters and proceedings" (in this court's jurisdiction under the old § 1334) and the "arising in or related to" matters (in this court's jurisdiction under 28 U.S.C. § 1331 or § 1332) to the bankruptcy judge.

*In re Braniff,* 27 B.R. *supra,* at 235.

█ As the nature of the present controversy does not fall within the old classification of a "summary" proceeding, the only

valid alternative on the facts presented, upon which to base this court's jurisdiction is 28 U.S.C. § 1332, diversity of citizenship. As noted above, the record reveals that both Plaintiffs reside in Ohio. Defendant GM, being a Delaware Corporation with its principal place of business alleged to be in Detroit, Michigan, resides in Michigan and Defendant Bowling Green, a municipal corporation in Kentucky clearly resides in Kentucky. Therefore, complete diversity appears to exist among the Plaintiffs and Defendants thus enabling Plaintiffs to rely upon § 1332 as providing an alternative source of jurisdiction in this Court over the present controversy, if in fact the Supreme Court intended to render the entire jurisdictional grant in § 1471 invalid.

IV. *Personal Jurisdiction over Bowling Green*

■ Having found that the Court has subject matter jurisdiction over the present controversy pursuant to the Bankruptcy Reform Act, the Court finds without merit the argument concerning lack of personal jurisdiction over Bowling Green because of the alleged invalidity of Bankruptcy Rule 704(f)(1) (cited in note 1), which provides for nationwide service of process. In particular, the Court notes that, with respect to the present controversy, it is currently operating under the Interim Rule discussed above and contained in the Appendix. Interim Rule (g) provides, *inter alia,* that the Bankruptcy Rules governing "courts of bankruptcy and procedure in bankruptcy shall continue to . . . [govern] . . . to the extent that such . . . Rules are not inconsistent with the holding of *Northern Pipeline* . . . ." The Court in *Northern Pipeline* struck down as unconstitutional the broad grant of subject matter jurisdiction to non-Article III courts. *Northern Pipeline,* 102 S.Ct. *supra,* at 2880. *See also, White Motor Corp.,* 704 F.2d *supra,* at 259. Nothing in that holding compels a finding that the Rules governing personal service are also invalid. Nationwide service of process goes to the question of personal jurisdiction and in no way raises a question of what types of cases may be decided by a non-Article III

court. Therefore, the Court concludes that service on Bowling Green pursuant to Bankruptcy Rule 704(f)(1) was proper and that the Court has personal jurisdiction over Bowling Green.

■ The Court also notes that notwithstanding the continued vitality of the nationwide service provision under the Bankruptcy Rule, Ohio's "long arm" statute contained in Ohio Rules of Civil Procedure No. 4.3(A) could also have been relied upon as a valid means of obtaining personal jurisdiction over Bowling Green. In particular, this provision enables the Court to "exercise personal jurisdiction over a person who directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state." Ohio Revised Code § 2307.382(A)(1).

The courts of the Sixth Circuit have consistently applied a three stage analytical approach in determining if the defendant has transacted any business in Ohio. *See, Welsh v. Gibbs,* 631 F.2d 436, at 439–440 (6th Cir.1980); *Priess v. Fisherfolk,* 535 F.Supp. 1271, 1273 & 1274 (S.D. Ohio 1982); *Neff Lettering Co. v. Walters,* 524 F.Supp. 268, 270 (S.D. Ohio 1981). This approach involves analysis of the facts according to the following guidelines:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Welsh v. Gibbs,* 631 F.2d *supra,* at 440 (quoting *Southern Machine Company, Inc. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968)).

Critical to this analysis is the concept of purposeful behavior on the part of the Defendant. This requirement stems from the Supreme Court decisions of *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The concern of the

Supreme Court, as explained by the court in *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, at 225 (6th Cir.1972), is fairness to the defendant. An individual should not be forced to defend a matter in a jurisdiction if he has not by his own actions availed himself of the privilege of doing business in that state.

In *In-Flight Devices,* the Sixth Circuit noted that "[t]he making of a substantial business contract with a corporation based in another jurisdiction has been held to be adequate to satisfy the requirements of the 'purposeful' test . . . ." *Id.* at 227.

That Bowling Green solicited bids and subsequently entered into contracts with Foreman valued at over $7,000,000 (Mills Affidavit, ¶ 9) satisfies the requirement discussed in *In-Flight Devices* of having "purposefully availed [itself] of acting . . . or causing consequences in the forum state." Similarly the second prong of the above stated test is met in that the present controversy arises from the contractual relation formed between Bowling Green and Foreman. *See, In-Flight Devices,* 466 F.2d *supra,* at 229.

Finally, the Court determines that Bowling Green has "sufficient contact with Ohio to make the exercise of jurisdiction over it reasonable." *Id.* at 232. In the first place, Ohio has a significant interest in the resolution of matters affecting the potential estate of a resident debtor in possession undergoing reorganization. Moreover, the level of activity and financial impact in Ohio foreseeably resulting from the contracts initiated by Bowling Green makes it fair and reasonable to require Bowling Green to defend in Ohio an action based upon those contracts. *See, e.g., In-Flight Devices, supra,* at 233.

Therefore, the Court concludes that it may properly exercise personal jurisdiction over Bowling Green pursuant to Bankruptcy Rule 704(f)(1), as well as pursuant to Ohio's long arm statute, Ohio Revised Code § 2307.382(A)(1). The motion to dismiss for lack of personal jurisdiction over Bowling Green is, accordingly, overruled.

## V. *Venue in this Court*

Defendants argue that, assuming without conceeding that the Court has jurisdiction over the controversy, venue is not proper as to Bowling Green and, therefore, those claims that relate to the work done in Bowling Green must be dismissed or, in the alternative, severed from this proceeding and transferred to the Western District of Kentucky.

Plaintiffs contend that venue is properly laid in this district whether the Court relies upon 28 U.S.C. § 1473, the venue provisions contained in the BRA, 28 U.S.C. § 1391(a),[4] 28 U.S.C. § 1391(b),[5] or 28 U.S.C. 1391(c).[6] Plaintiffs also assert that even if none of these provisions leads to a finding that venue is proper in this district, Bowling Green waived any objection to venue it may have had when it allowed GM to file proof of claim in Foreman's Chapter 11 case that included claims for damages arising out of Foreman's work on the Bowling Green project. The filing of this proof of claim is viewed by Plaintiffs as a consent by Bowling Green to venue in this Court.

The Court turns first to the determination of which venue provision is controlling and whether venue is proper in this district as to Bowling Green. A review of the

---

**4.** 28 U.S.C. § 1391(a) provides:
    (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

**5.** 28 U.S.C. § 1391(b) provides:
    (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

**6.** 28 U.S.C. § 1391(c) provides:
    (c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

venue provisions in the BRA reveals that the only provision that could be applicable to the determination of proper venue in this proceeding is contained in 28 U.S.C. § 1473(a) which states:

> (a) Except as provided in subsection (b) and (d) of this section [neither exceptions being relevant to the present controversy], a proceeding arising in or related to a case under title 11 may be commenced in the bankruptcy court in which the case is pending.

If this provision controls the question of venue, then the filing of this action in the Southern District of Ohio, Western Division, the same district wherein Plaintiff Foreman's Chapter 11 proceeding is pending would be acceptable and venue would be proper in this district.

With respect to the applicability of 28 U.S.C. § 1473(a), Defendants contend that § 1473 was intended to apply only to bankruptcy courts and as the *Northern Pipeline* decision removed the jurisdictional grant to the bankruptcy courts, so too were the associated venue provisions rendered invalid. Furthermore, Defendants contend that had Congress intended these venue provisions to apply to the district courts, Congress, being aware of the distinction between bankruptcy courts and district courts, would have specified that they were defining venue for the district courts. In support of their reasoning, Defendants cite Senate Bill No. 1013 which reflects the Senate's attempt to modify the BRA to conform with the *Northern Pipeline* decision. In particular, Defendants point to the new § 1473(a) which provides, in pertinent part, that "a proceeding arising in or related to a case under title 11 may be commenced in the *district court* in which such case is pending." (emphasis added by Defendants). Defendants find that, as the present venue provision refers to "bankruptcy courts" and the recommended modification refers to "district courts," it is clear that the present venue provision was not intended to define the venue of the district courts and therefore has no bearing on the determination of

whether venue is properly laid in this district.

The Court finds the Defendants' reasoning unpersuasive. In the previous section, the Court found that it had jurisdiction over the present controversy pursuant to 28 U.S.C. § 1471(b). Moreover, the Court found that the Bankruptcy Court had jurisdiction over the matter when it was first filed, by virtue of 1471(c) and, after the *Northern Pipeline* stay was lifted, by virtue of the combined operation of the jurisdictional grant to the district courts under 1471(a) and (b) and Interim Rule (c)(1) which provided for the automatic referral to bankruptcy courts of, *inter alia,* all civil proceedings arising in or related to cases under title 11. The Court also noted that, as this district is operating under the directives in the Interim Rule, it is to continue to apply the provisions of title 11 and the related rules to the extent they "are not inconsistent with the holding in *Northern Pipeline* . . . ." (Interim Rule (g)).

Based upon these holdings, it is clear that the jurisdiction of the bankruptcy courts and the district courts over proceedings such as the one presently before the Court remains to be derived from the Bankruptcy Reform Act. Having thus acknowledged the continuation of the jurisdictional grant contained in the Bankruptcy Reform Act, albeit through a somewhat different institutional structuring than that established in the Act, the Court can find no persuasive reason why the applicable venue provisions in the Act should nonetheless be rendered void and of no effect. Nothing in the holding of *Northern Pipeline* compels, or even suggests, such a finding. Whether a matter is properly venued in a particular district in no way touches upon the concern of the Supreme Court that non-Article III Courts not have jurisdiction to make final determinations in matters peripheral to the bankruptcy case. *See, Northern Pipeline,* 102 S.Ct. *supra,* at 2882; *White Motor Corp.,* 704 F.2d *supra,* at 259–260.

Moreover, the Court does not agree that the reference to "bankruptcy courts" as opposed to "district courts" in the present

section 1473(a) precludes that provision from being applied in determining if venue is proper with respect to the parties in this proceeding. In reviewing *Collier's* excerpts of the legislative history of both § 1471, the section conferring jurisdiction, and § 1473, the venue provision at issue herein, what emerges is a Congressional intent to centralize the sundry cases and proceedings that arise in the course of a reorganization. *See, 1 Collier on Bankruptcy,* ¶¶ 3.01–3.02 (15th Edition, 1983). The concern over diminution of an estate already insufficient to meet creditors' claims, as well as the attendant delay of having to pursue litigation in a variety of forums, led Congress to restructure the jurisdictional sections of the former bankruptcy laws. *Id.* at 3–30 through 3–36. Similarly, in keeping with this desire, the venue provisions were designed so that venue for proceedings arising under title 11 or arising in or related to a case under title 11 would always be proper, though not mandatory, in the district where the title 11 case is pending. *Id.* at 3–166 through 3–167.

To the extent that Senate Bill No. 1013 can be viewed as evincing further Congressional intent with respect to the continued vitality of the venue provisions, the Court is more persuaded by what is retained in the proposed revision to the venue sections than by what is changed. The proposed revision to § 1473, for example, continues the broad permissive venue provision presently contained in the Bankruptcy Act. However, as the holding in *Northern Pipeline* requires that the district courts be the repository of jurisdiction, the proposed venue revision

simply clarifies that cases are "commenced" in the court with jurisdiction, *i.e.,* the district court.[7] This modification does not alter the definition of what is proper venue, but rather only reflects an attempt to square the venue provisions with the revisions in the jurisdictional provisions made necessary by *Northern Pipeline.* Specifically, the proposed revision to the section that granted bankruptcy courts jurisdiction, § 1471(c), provides that "all cases under title 11 and all civil proceedings arising under title 11, or arising in or related to cases under title 11 shall be *referred* to the bankruptcy court for the district." Clearly, if bankruptcy courts only receive cases by referral, a case could not be viewed as having "commenced" in the bankruptcy court. The modification then, in the venue provision, merely clears up what would have been an inaccurate reference to where the bankruptcy case in fact commenced.

█ Whatever Congress may promulgate as the final revisions to the Bankruptcy Act, the Court finds that the directive of Interim Rule (g) that those provisions of the Bankruptcy Act and associated rules not inconsistent with *Northern Pipeline* shall continue to govern courts of bankruptcy and procedure in bankruptcy leads this Court to conclude that the venue provision of § 1473 is still controlling in determining whether venue is proper in proceedings such as this.

In addition, as noted above, should it develop that the entirety of the jurisdictional grant in § 1471 was in fact intended to have been rendered unconstitutional in

---

7. The proposed modifications in S.B. 1013 to jurisdictional sections are as follows:

    (a) Except as provided in subsection (b) of this section, the district courts hall have original and exclusive jurisdiction of all cases under title 11.

    (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

    (c) All cases under title 11 and all civil proceedings arising under title 11, or arising in or related to cases under title 11 shall be referred to the bankruptcy court for the district. The bankruptcy court for the district in which a case or proceeding under title 11 is pending shall have the authority to exercise all of the jurisdiction conferred on the district courts by subsections (a) and (b) of this section, except where inconsistent with the Constitution, unless such case or proceeding has been recalled by the district court.

The Court notes that the system envisioned in this Bill is not dissimilar from that established in Interim Rule in the Appendix.

*Northern Pipeline,* the Court's jurisdiction over this matter is conferred by 28 U.S.C. § 1332, because of the existence of diversity of citizenship. This is not to say that jurisdiction is based upon both 28 U.S.C. § 1471 and 28 U.C.C. § 1332. Rather, this Court has held that it has jurisdiction over the controversy by virtue of the provisions in the Bankruptcy Act and that, therefore, the venue provisions of the Act control. If, however, § 1471 is invalid, then this Court bases its jurisdiction solely upon diversity of citizenship pursuant to 28 U.S.C. § 1332, and finds 28 U.S.C. § 1391(a) to be the controlling venue provision. This subsection provides in pertinent part that: (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may ... be brought only in the judicial district where all Plaintiffs or all Defendants reside." The pleadings and affidavits submitted in this matter to date reflect that both Plaintiffs, Foreman and the Bank, reside in this district and, therefore, venue would also be proper in this district in the unlikely event that the bankruptcy provisions relied on by the Court were rendered invalid by *Northern Pipeline.*

## V. Should the Claims Against Bowling Green Be Severed and Transferred

Both Defendants also move to have the claims against Bowling Green concerning the Bowling Green project severed from this action and transferred to the Western District of Kentucky pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice ...." Defendant's support their motion for severance and transfer in part by detailing the many ways in which the Bowling Green project and Moraine project constituted separated endeavors. They argue that Plaintiffs have misjoined Bowling Green in that the claims against Bowling Green and GM did not "arise out of the same transaction, occurrence, or series of transactions and occurrences" nor will "any question of law or fact common to all Defendants ... arise in the action." Fed.R. Civ.P. 20(a).

Defendants have carefully detailed to the Court the many ways in which the two projects differed. For example, Defendants assert that the projects involved different contracts with different terms, executed by different parties, concerning different work to be performed at different sites, are controlled by different states' laws and were designed by different engineers, supervised by different managers and staffed by different employees. Thus, Defendants argue, neither of the commonality requirements of Rule 21 have been met.

Alternatively, Defendants argue that the actions should be severed pursuant to the criteria in Fed.R.Civ.P. 42(b) for governing the Court's discretion in ordering a separate trial, to wit: "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy ...." Defendants urge that separate trials will enhance the "orderly administration" of this case and will reduce the likelihood of confusing the jury due to what they view as "two sets of complex claims asserted herein." (GM's Memorandum in Support of its Motion to Dismiss, etc., p. 12).

Finally, Defendants contend that severance is warranted in order that the claims concerning the Bowling Green project may be transferred pursuant to 28 U.S.C. § 1404(a) to the Western District of Kentucky which is alleged to be the more convenient forum for the litigation of the claims concerning the Bowling Green project.

Plaintiffs, in response to Defendants' motion and arguments, countered that Bowling Green is but a nominal party in the present proceeding. (First Amended Complaint, ¶ 69). Plaintiffs emphasize in their First Amended Complaint that they allege no wrongdoing on the part of Bowling Green, nor do they seek to recover damages from Bowling Green. (*See,* id., ¶¶ 68–99). Rather, Plaintiffs assert that in the present cause of action, GM is the responsible actor who initiated the two projects (the Bowling Green and Moraine projects) for which the

plans were "totally inadequate and defective and the contractors [including Foreman] were misled into bidding on something that turned out to be totally different once everyone got into the situation." (Transcript of Proceedings, of May 11, 1983, D. Greer, Attorney for Foreman). Through the amended complaint, as well as Plaintiffs' memorandum and arguments at the hearing, Plaintiffs have focused their attention on the alleged acts and omissions of GM and appear solely bent on finding GM responsible for the claimed damages Foreman incurred due to the alleged breaches of contract and warranty, misrepresentation, and negligence, all of which are attributed to GM's conduct.

The Court turns first to the argument that Bowling Green has been misjoined and thus must be severed from this action along with the claims made concerning the Bowling Green project. The Court finds that the record at this time does not justify such action by the Court. Defendants have submitted the affidavits of John F. Kispert, Resident Comptroller of the Chevrolet Motor Division, Moraine Plants (Doc. # 10, Exh. A) and Roger M. Hurst, Comptroller of the GM Assembly Division facility located at Bowling Green, Kentucky (Doc. # 10, Exh. B) and Norman F. Whitehead, Director of Plant Engineering at the Bowling Green GM plant, in an attempt to underscore that the two projects were distinct and separate undertakings. Plaintiffs have submitted the affidavit of Jon Mills, President of Foreman Industries in an attempt to underscore the overriding role of GM in controlling the destiny of both projects. Nothing in the record, however, definitively affirms or disaffirms that GM's conduct in fact precipitated the problems Foreman claims to have had in fulfilling its obligations under the respective Bowling Green and Moraine contracts. It may develop that Plaintiffs will be unable to prove that GM acted in a common way with respect to the two projects. Nonetheless, it would be premature at this time to foreclose Plaintiffs from pursuing that opportunity. Suffice it to say that the Amended Complaint spells out a course of conduct on the part of GM acting with and involving the personnel at the Moraine and Bowling Green projects that meet the requirement of Fed.R.Civ.P. 20(a) that the claims asserted against joined Defendants arise out of the same "series of transactions or occurrences." Moreover, the state of the record at this time does not establish that these claims are meritless.

Similarly, though the legal and factual issues involving the two projects will vary in many respects, "joinder may be permissible if there is but one question of law or fact common to the parties." *Mesa Computer Utilities, Inc. v. Western Union Computer Utilities, Inc.,* 67 F.R.D. 634 (Del. 1975); *citing, Music Merchants, Inc. v. Capitol Records, Inc.,* 20 F.R.D. 462 (S.D.N.Y. 1957). At this junction, the Court cannot say that there will be *no* common question of law or fact with respect to the claims arising out of the two projects.

Similar uncertainties about the relationship between the parties and the propriety of severance arose in *Mesa Computer, supra,* and *Goodman v. H. Hentz Co.,* 265 F.Supp. 440 (N.D.Ill.1967). In both cases, the courts deferred decision on the issue of severance until the record was more fully developed. *Mesa Computer,* 67 F.R.D. *supra,* at 637–638; *Goodman,* 265 F.Supp. *supra,* at 443. The Court likewise finds that ordering severance on the basis of misjoinder is not warranted on the record at this time and, therefore, denies Defendants' motions. Defendants, however, are granted leave to renew these motions if and when discovery has proceeded and the factual record is more developed.

The Court also finds that the record does not support a determination that separate trials should be ordered at this time. As stated above, Fed.R.Civ.P. 42(b) provides that the Court may order a separate trial of any claims or issues presented in an action "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." The District Court has broad discretion in determining whether separate trials should

**726**

be ordered. *U.S. v. Acres of Land, Yuma & Mohave Counties,* 564 F.2d 1350, 1352 (9th Cir.1977); *Lusk v. Pennzoil,* 56 F.R.D. 645, 647 (N.D.Miss.1972). Factors to consider that are relevant to the present proceeding include whether the issues for which separate trials are sought vary significantly; whether discovery with respect to the issues suggests that separate trials would be preferable; whether separate witnesses and documentary proof will be required, and whether the party who opposes separate trials will be prejudiced. *See, Washington Whey Co. v. Fairmont Foods,* 72 F.R.D. 180 (Neb.1976); *citing, Reading Indus. v. Kenneth Copper Corp.,* 61 F.R.D. 662, 664 (S.D. N.Y.1974). *See also, Lusk v. Pennzoil United, Inc.,* 56 F.R.D. at 647.

As with the motion for severance, the motion for separate trials comes at a time when the record is insufficiently developed to determine whether there would be less delay, expense, inconvenience, confusion to the jury and potential prejudice to the parties in allowing a single trial of the issues presented or in ordering separate trials on the Moraine and Bowling Green projects. As noted by the Court in *Moss v. Associated Transport, Inc.,* 344 F.2d 23 (6th Cir.1965), "separation of issues 'should be resorted to only in the exercise of informed discretion and in a case and at a juncture which move the court to conclude that such action will really further convenience or avoid prejudice' ... 'a paramount consideration at all times is a fair and impartial trial to all litigants. Considerations of economy of time, money and convenience of witnesses must yield thereto.'" *Id.* at 344, quoting, *Frasier v. Twentieth Century-Fox Film Corp.,* 119 F.Supp. 495, 497 (D.Neb.1954); and *Baker v. Waterman S.S. Corp.,* 11 F.R.D. 440, 441 (S.D.N.Y.1951).

Finding that the record at this time does not support a conclusion that separate trials would best result in a "fair and impartial trial to all litigants," the Court denies Defendants' motions for separate trials, with leave to renew the motions if and when the record is more fully developed.

The final matter to be addressed is whether severance of the action against Bowling Green can be supported on the grounds of 28 U.S.C. 1404(a), that transferring this action to the Western District of Kentucky would be in the interest of justice and for the convenience of the parties and witnesses. The Court first notes that having found this action to be a proceeding arising in or related to a Title 11 case, the controlling transfer of venue provision is found in 28 U.S.C. § 1475 which provides:

A bankruptcy court may transfer a case under Title 11, or a proceeding arising under or related to such case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties.

Though the language of this provision mirrors that in 1404(a), it is not clear that in matters such as the present proceeding, the inquiries under both provisions are identical. At the minimum, the Court must consider those factors weighed in determining whether a transfer is appropriate under 1404(a), to wit:

An interest to be considered and the one most likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Neff Athletic Lettering Co. v. Walters,* 524 F.Supp. 268, 272 (S.D.Ohio 1981), quoting, *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

In addition, the *Gilbert* court stated that "factors of public interest" were applicable, including congested court dockets and the appropriateness of having trial of a diversity case in the forum at home with the law which will govern the case. *Id.*

The question arises, though, whether any or all of the factors viewed under the prior bankruptcy laws and rules as relevant for

consideration in motions to transfer bankruptcy cases should have any bearing on whether to transfer proceedings that are only "related to" such cases. These factors are: "(1) The proximity of creditors of every kind to the Court; (2) The proximity of the bankrupt (debtor) to the Court; (3) The proximity of the witnesses necessary to the administration of the estate; (4) The location of assets; (5) The economic administration of the estate; (6) The necessity for ancillary administration if bankruptcy should result." *In re Matter of Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239 (5th Cir.1979).

Defendants argue such factors are only relevant for consideration when the question is whether the bankruptcy case itself should be transferred. Plaintiffs contend these factors should be considered in proceedings such as this which are related to a pending bankruptcy case and cite as authority *In re Cole Associates*, 7 B.R. 154 (Bkrtcy.D.C.Utah 1980), an action wherein the debtor in a pending reorganization proceeding was attempting to recover property certain secured creditors were holding.

The Court in *In re Cole* emphasized that these additional factors must be given "significant weight" because of the "remedial character of the reorganization proceeding." *Id.* at 157. Moreover, the Court found that "the remedial nature of the ... Chapter 11 case requires that special emphasis be laid upon the economic and efficient administration of the estate." *Id.* (citations omitted).

The Court notes that under the prior bankruptcy law and rules, factors considered relevant in determining whether to transfer an adversary proceeding paralleled those considered in 1404(a) transfer motions. *1 Collier on Bankruptcy,* ¶ 3.02[4] pp. 3–196 through 3–208.2. However, though the case law concerning transfer of adversary proceedings under the prior bankruptcy laws may provide helpful guidance, the Court must also give consideration to the Congressional intent reflected in the new Bankruptcy Reform Act to expand the jurisdiction and the venue provisions in such a way that all matters arising in or related to a bankruptcy case may be tried in a single forum. *See, In re Lifeguard Industries,* 26 B.R. 858 (Bkrtcy.S.D.Ohio 1983). As noted above, centralizing in a single forum the various proceedings that arise in the course of or are related to a reorganization serves to reduce the strain on an already insufficient estate. Plaintiff Foreman is in the midst of a Chapter 11 reorganization pending in this district. The Court has exercised jurisdiction over this related case pursuant to the jurisdictional grant contained in the BRA. Similarly, the Court has found it appropriate to rely upon the nationwide service of process and broad venue provisions in determining whether the Court may exercise personal jurisdiction over Bowling Green and whether venue is properly laid in this district. The Court has drawn upon the provisions contained in the BRA and associated rules in part because the decision in *White Motor Corp.* and the Interim Rule under which this circuit is operating mandates such reliance. Absent such controlling authority, however, the Court would nonetheless feel compelled to follow the same course in order to effectuate the intent of Congress as reflected in the BRA provisions left unaffected by the *Northern Pipeline* decision; that is, to enhance the prospects of successful reorganization and the economic administration of the estate by enabling all proceedings arising under or related to the bankruptcy case to proceed in a single forum.

Having thus far recognized the purpose and continued vitality of the BRA, the Court finds that it would be inconsistent, when determining the appropriateness of a motion to transfer, to completely disregard the fact that the Plaintiff Foreman in this case is involved in a reorganization proceeding. As stated by the court in *In re Nixon Machinery,* 27 B.R. 871 (Bkrtcy.E.D.Tenn. 1983), "In a bankruptcy case, a paramount consideration is speedy and economic administration of the bankruptcy case. This consideration underlies the general rule that the court where the bankruptcy case is pending is the proper venue for all related

proceedings within the court's jurisdiction." *Id.* at 873.

Therefore, in addition to those factors considered under 1404(a) motions to transfer, the Court finds that the economic administration of the estate is a factor entitled to considerable weight in view of the remedial nature of the reorganization proceedings and the interests of the other creditors who share a stake in this already inadequate estate. *See, In re Cole Associates, Inc.,* 7 B.R. *supra,* at 159. Included in this consideration is the proximity of the debtor to the court and the added burden on the estate should the present proceeding be severed into two actions to be conducted in two different forums. Furthermore, this Court agrees that "[s]ince the general policy is to have all proceedings related to a bankruptcy case tried in the court where the case is pending, a proceeding should not be transferred except on a clear showing that transfer will be in the interest of justice and for the convenience of the parties." *Id. See also, In re International Coins and Currency,* 18 B.R. 79 (Bkrtcy.D.Ver.1982).

The Court finds, however, that the remaining factors itemized in *In re Matter of Commonwealth Oil Refining Co., supra,* and listed above, are not particularly relevant to determining whether this matter related to a bankruptcy case should or should not be transferred. In particular, as other creditors will not be participating in this proceeding, their proximity to the Court should not be considered. Similarly, the location of the debtor's assets, "the proximity of witnesses necessary to the administration of the estate," and "the necessity for ancillary administration if bankruptcy should result" (*Id.* at 1239) all appear to be more relevant when determining whether a reorganization case or proceeding more directly related to the reorganization should be transferred.

Having thus determined the factors entitled to consideration, the Court must preface its discussion of those factors with the observation that the nature of the present proceeding of necessity must also bear upon the determination of whether transfer is appropriate. As stated above, at this juncture, it appears that Plaintiffs are primarily concerned about what they allege to be the common conduct of GM with respect to the Moraine and Bowling Green projects. Furthermore, it has been noted by the Court that the record in its present state is not sufficiently developed for the Court to determine if in fact this is more a single action against GM than it is the joining together of two distinct actions which should properly be severed or separated for trial purposes. To the extent this Court is willing, for the time being, to accept Plaintiffs' theory of a single cause of action against GM, then arguments in favor of severance for purposes of transferring part of this purportedly single cause of action, of necessity pale somewhat, especially when the Court factors in the consideration that Plaintiff Foreman is also in the process of reorganization.

The Court recognizes, therefore, that viewed as two separate and distinct causes of action, one claim involving the Moraine project, the other the Bowling Green project, the cause of action concerning the Bowling Green project presents a factual situation not completely dissimilar from that presented to this Court in *Mead Corporation v. Oscar J. Boldt Construction Co.,* 508 F.Supp. 193 (S.D.Ohio 1981). In *Mead Corp.,* Mead, an Ohio corporation, was suing two Wisconsin contractors concerning work performed by the contractors at a Mead manufacturing plant in Michigan. The Court found that transfer of the action to the Michigan district wherein the construction site was located was desirable because the jury would be able to view the scene, the alleged breaches of contract took place in that district, the Michigan forum was more convenient to the majority of witnesses, documents needed in the case were located in Michigan, and the contract had provided that it was to be controlled by Michigan law. *Id.* at 194–199.

Defendants urge that similar considerations in the present controversy with respect to the claims concerning the Bowling Green project weigh strongly in favor of severance and transfer. According to De-

fendants, all five of their key witnesses, and all of their over seven additional potential witnesses reside in Bowling Green. (Doc. # 10, Exh. C, Affidavit of Thomas Y. Allman, attorney for GM, ¶¶ 2, 3) Defendants point out that all of GM's documents concerning the Bowling Green project, as well as those belonging to the construction engineer, Morrison-Knudsen, and the City of Bowling Green are located in Bowling Green. (Doc. # 10, Exh. B, Hurst Affidavit, ¶ 8; Allman Affidavit, ¶ 4). Defendants also urge that, since Foreman has made challenges with respect to the adequacy of the design, planning and difficulty of installation as well as allegations concerning interference, lack of coordination and delay in various areas of the plant, it will be necessary to transport the jury to the plant for an on-site inspection of the installations and equipment involved. (Allman Affidavit, ¶ 5). Moreover, Defendants urge that various public policy considerations weigh in favor of severance and transfer of the Bowling Green claims. In particular, Defendants emphasize that Kentucky law will be applicable and that consideration of unsettled questions of Kentucky law will doubtlessly arise and should be construed by a court in that state. Defendants also submit that a jury sitting in this district should not be made to consider a dispute which, it is argued, has no connection with this district. Similarly, the citizens of Kentucky do have an interest in this alleged local controversy which, it is argued, weighs in favor of the dispute being tried in Kentucky.

The Court does not consider Defendants arguments entirely without merit. However, as stated above, the factors emphasized by Defendants must be weighed against those factors which weigh in favor of maintaining the entire action in this district. The Court finds that the fact that Plaintiff Foreman has a Chapter 11 reorganization case pending in this district, coupled with the fact that Foreman resides in this district, weighs strongly in favor of retention of the entire proceeding in this district. *See, e.g., In re Cole Associates, Inc.,* 7 B.R. *supra,* at 159; *In re Internation-*

*al Coins and Currency,* 18 B.R. 79, 82 (Bkrtcy.D.Vt.1982). Furthermore, the fact that Foreman is undergoing a reorganization, the outcome of which may have a financial impact within this district, indicates, contrary to Defendant's argument, that the residents of this district do have an interest in the outcome of this proceeding.

The Court also finds that though there are similarities between the *Mead Corp.* case and the arguments in favor of severance and transfer of the Bowling Green claims, so too are there differences which tip the balance in favor of allowing Plaintiffs to pursue their entire cause of action in this forum. In the first place, in *Mead,* in response to defendant's motion to transfer the action to Wisconsin, plaintiff had moved in the alternative, to have the action transferred to Michigan. Therefore, though plaintiff may have preferred its initial choice of forum, plaintiff, nonetheless, was able to identify an alternative acceptable forum in which to litigate its action. Plaintiffs in the present action have not provided the Court with an alternative forum, but rather assert that this is the only district in which they can efficiently and economically assert their claims. Moreover, the facts in *Mead Corp.* established that transfer of the action would not only lessen the burden on the defendants, but would also lessen the pressure on plaintiff as many of the plaintiff's witnesses and documents were located in the Michigan district to which transfer was sought. *Mead Corp.,* 508 F.Supp. *supra,* at 199. Unlike the present case, the granting of the motion to transfer did not leave an impecunious plaintiff in the position of having to litigate in two different forums two actions ostensibly involving many overlapping issues and much overlapping proof. Also, unlike the present case, the *Mead Corp.* did not involve a plaintiff undergoing reorganization. Thus the plaintiff's choice of forum was accorded no greater weight than the other factors to be considered, and defendants had only to establish that the forum to which transfer was sought was only "*more convenient vis a vis* the plaintiff's initial

choice." *Id.* at 198. The strong interest in the economic administration of the estate and the desire to preserve the estate for the benefit of all creditors of necessity requires placing more emphasis on the Plaintiffs' choice of forum to the extent that it serves to minimize the diminution of the estate.

On balance, the Court finds that the factors in favor of severance for the purposes of transferring the claims concerning the Bowling Green project are outweighed by those factors which weigh in favor of maintaining this action, at least for the time being, as a single suit, to be tried in the same district where Plaintiff Foreman's reorganization proceeding is pending. As with Defendants' motion for severance or for separate trials, the Court grants the Defendants leave to renew their motion for severance and transfer if and when the record is more fully developed and the Court is better able to determine whether severance is the preferable course to pursue.

### VII. *Conclusion*

Based upon the reasoning and authorities cited above, the Court finds that it has subject matter over this entire proceeding pursuant to 28 U.S.C. § 1471(b), and that it has personal jurisdiction over Defendant Bowling Green pursuant to Bankruptcy Rule 704(f)(1). The Court also finds that venue is properly laid in this district as to the entire controversy pursuant to 28 U.S.C. § 1473(a).

Moreover, the Court finds that it would be premature, based upon the record at this time, to order severance or a separate trial of the claims concerning the Bowling Green project. Similarly, the Court finds that severance of the claims concerning the Bowling Green project, for the purpose of transferring to the Western District of Kentucky, is not supported by the record at this time.

Accordingly, Defendants' motions to dismiss for lack of subject matter jurisdiction are denied, as is Defendant Bowling Green's motion to dismiss the action against it for lack of personal jurisdiction.

Defendants' motions for severance or for separate trials, as well as their motion for severance and transfer of the Bowling Green claims to the Western District of Kentucky are denied, but leave is granted to Defendants to renew these motions if and when the record is more fully developed.

### APPENDIX

### RULE

#### (a) Emergency Resolution

The purpose of this rule is to supplement existing law and rules in respect to the authority of the bankruptcy judges of this district to act in bankruptcy cases and proceedings until Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* [458 U.S. 50], 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), or until March 31, 1984, whichever first occurs.

The judges of the district court find that exceptional circumstances exist. These circumstances include: (1) the unanticipated unconstitutionality of the grant of power to bankruptcy judges in section 241(a) of Public Law 95–598; (2) the clear intent of Congress to refer bankruptcy matters to bankruptcy judges; (3) the specialized expertise necessary to the determination of bankruptcy matters; and (4) the administrative difficulty of the district courts' assuming the existing bankruptcy caseload on short notice.

Therefore, the orderly conduct of the business of the court requires this referral of bankruptcy cases to the bankruptcy judges.

#### (b) Filing of bankruptcy papers

The bankruptcy court constituted by § 404 of Public Law 95–598 shall continue to be known as the United States Bankruptcy Court of this district. The Clerk of the Bankruptcy Court is hereby designated to maintain all files in bankruptcy cases and adversary proceedings. All papers in cases

or proceedings arising under or related to Title 11 shall be filed with the Clerk of the Bankruptcy Court regardless of whether the case or proceeding is before a bankruptcy judge or a judge of the district court, except that a judgment by the district judge shall be filed in accordance with Rule 921 of the Bankruptcy Rules.

(c) Reference to Bankruptcy Judges

(1) All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district.

(2) The reference to a bankruptcy judge may be withdrawn by the district court at any time on its own motion or on timely motion by a party. A motion for withdrawal of reference shall not stay any bankruptcy matter pending before a bankruptcy judge unless a specific stay is issued by the district court. If a reference is withdrawn, the district court may retain the entire matter, may refer part of the matter back to the bankruptcy judge, or may refer the entire matter back to the bankruptcy judge with instructions specifying the powers and functions that the bankruptcy judge may exercise. Any matter in which the reference is withdrawn shall be reassigned to a district judge in accordance with the court's usual system for assigning civil cases.

(3) Referred cases and proceedings may be transferred in whole or in part between bankruptcy judges within the district without approval of a district judge.

(d) Powers of Bankruptcy Judges

(1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:

(A) a proceeding to enjoin a court;

(B) a proceeding to punish a criminal contempt—

(i) not committed in the bankruptcy judge's actual presence; or

(ii) warranting a punishment of imprisonment;

(C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge; or

(D) jury trials.

Those matters which may not be performed by a bankruptcy judge shall be transferred to a district judge.

(2) Except as provided in (d)(3), orders and judgments of bankruptcy judges shall be effective upon entry by the Clerk of the Bankruptcy Court, unless stayed by the bankruptcy judge or a district judge.

(3)(A) Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings include, but are not limited to, claims brought by an estate against parties who have not filed claims against the estate. Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; allowance of and objection to claims against the estate; counterclaims by the estate in whatever amount against persons filing claims against the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings to set aside preferences and fraudulent conveyances; proceedings in respect to lifting of the automatic stay; proceedings to determine dischargeability of particular debts; proceedings to object to the discharge; proceedings in respect to the confirmation of plans; orders approving the sale of property where not arising from proceedings resulting from claims brought by the estate against parties who have not filed claims against the estate; and similar matters. A proceeding is not a related proceeding merely because the outcome will be affected by state law.

(B) In related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of

the judgment or order by the bankruptcy judge.

### (e) District Court Review

(1) A notice of appeal from a final order or judgment or proposed order or judgment of a bankruptcy judge or an application for leave to appeal an interlocutory order of a bankruptcy judge, shall be filed within 10 days of the date of entry of the judgment or order or of the lodgment of the proposed judgment or order. As modified by sections (e)2A and B of this rule, the procedures set forth in Part VIII of the Bankruptcy Rules apply to appeals of bankruptcy judges' judgments and orders and the procedures set forth in Bankruptcy Interim Rule 8004 apply to applications for leave to appeal interlocutory orders of bankruptcy judges. Modification by the district judge or the bankruptcy judge of time for appeal is governed by Rule 802 of the Bankruptcy Rules.

(2)(A) A district judge shall review:

(i) an order or judgment entered under paragraph (d)(2) if a timely notice of appeal has been filed or if a timely application for leave to appeal has been granted;

(ii) an order or judgment entered under paragraph (d)(2) if the bankruptcy judge certifies that circumstances require that the order or judgment be approved by a district judge, whether or not the matter was controverted before the bankruptcy judge or any notice of appeal or application for leave to appeal was filed; and

(iii) a proposed order or judgment lodged under paragraph (d)(3), whether or not any notice of appeal or application for leave to appeal has been filed.

(B) In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order or judgment.

(3) When the bankruptcy judge certifies that circumstances require immediate review by a district judge of any matter subject to review under paragraph (d)(2), the district judge shall review the matter and enter an order or judgment as soon as possible.

(4) It shall be the burden of the parties to raise the issue of whether any proceeding is a related proceeding prior to the time of the entry of the order of judgment of the district judge after review.

### (f) Local Rules

In proceedings before a bankruptcy judge, the local rules of the bankruptcy court shall apply. In proceedings before a judge of the district court, the local rules of the district court shall apply.

### (g) Bankruptcy Rules and Title IV of Public Law 95–598

Courts of bankruptcy and procedure in bankruptcy shall continue to be governed by Title IV of Public Law 95–598 as amended and by the bankruptcy rules prescribed by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075 and limited by Sec. 405(d) of the Act, to the extent that such Title and Rules are not inconsistent with the holding of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

### (h) Effective Date and Pending Cases

This rule shall become effective December 25, 1982, and shall apply to all bankruptcy cases and proceedings not governed by the Bankruptcy Act of 1898 as amended, and filed on or after October 1, 1979. Any bankruptcy matters pending before a bankruptcy judge on December 25, 1982 shall be deemed referred to that judge.